JAMES S. MORRISON, APPELLANT, V. JAMES HUNTER ET AL., APPELLEES.

FILED OCTOBER 5, 1905. No. 13,932.

1. **Principal and Agent: GOOD FAITH.** One occupying confidential relations toward another is held to the exercise of scrupulous good faith, and will not be permitted to make use of knowledge or opportunities to his own advantage and the injury of the party with whom he is dealing, from which the latter is in good conscience entitled to profit.

2. **Evidence** examined, and *held* to entitle the plaintiff to the relief prayed in his petition.

APPEAL from the district court for Harlan county: ED L. ADAMS, JUDGE. *Reversed with directions.*

R. L. Keester, J. G. Thompson and Flansburg & Williams, for appellant.

F. B. Beall, John Everson and Stewart & Munger, contra.

AMES, C.

D. S. Gray, a nonresident, was the owner of a quarter section of land in Harlan county, in this state, which was in the possession of a tenant named Smith. Gray wrote to James Hunter, who lived at Republican City, near the land, a letter authorizing the latter to sell or lease the land to Leannah Berry and Lee L. Berry for a term of years. The Berrys were in possession under Smith, and pursuant to this authority Hunter executed and delivered to them a lease containing the following covenants: "It is further expressly agreed between the parties hereto that the parties of the second part are to have the refusal of buying said premises, if any other party wants to buy them. It is further agreed by the parties of the second part that they will not sublet or in any manner release without the written consent of the party of the first part." Rent was reserved, payable annually, with a provision for forfeiture of the residue of the term for nonpayment when due. Appellant Morrison owned an adjoining tract of land and was desirous of purchasing the premises in question. With that end in view he had several conversations with the Berrys and with Hunter, and the latter assured him that, by purchasing and taking an assignment of the lease and the residue of the term from the former, he would succeed to their option of purchase contained in the covenant first above quoted. After some negotiation and in reliance upon these assurances Morrison did make the purchase, paying the Berrys $200 for improvements they had put upon the premises and $175 for the unexpired portion of the term, and taking a written assignment of the lease, which was indorsed in the instrument by Hunter, and went into possession. During the progress of these negotiations, and afterwards, Morrison was also in negotiation with Hunter and with Gray for the purchase of the title to the premises. Gray also offered to sell the land to Hunter for $1,200, but Hunter, instead of com-

municating that fact to Morrison, told the latter that the lowest price for which it could be bought was $1,500. Morrison opened correspondence with Gray through an agent named Buchanan, to whom Gray also offered to make sale for $1,200. This last offer Morrison communicated to Hunter, who denied that the land could be purchased for that price, but on the same day he accepted by telegram the offer by Gray to sell to himself for $1,200, and within a few days and in due course of the mails forwarded the purchase price and received a deed, which he put upon the records of the county. Shortly afterwards Hunter conveyed the "east eighty" of the land by a quitclaim deed to A. B. Heath, and the latter conveyance was made of record also.

There is a considerable mass of evidence which is somewhat conflicting as to minor details, but the foregoing are the ultimate facts disclosed by the record, with little or no substantial conflict. This action was brought by Morrison against Hunter, Heath and Gray to compel a conveyance of the land to him upon payment of the sum of $1,200. Gray was not served with summons and is not a necessary party. Heath filed an answer, alleging that prior to the purchase of the lease by Morrison it was agreed between the two that they would buy the lease and improvements at equal expense and then divide the occupancy of the land between them, he taking the east eighty and Morrison the other, and that he paid his share of the purchase price to Morrison, who obtained the assignment of the lease to himself in violation of the agreement; but it does not appear that he suffered any injury by that fact, because he says that he entered into possession and has remained in possession of the east eighty under the assignment until the present time, and that repeatedly before the purchase of the land by Hunter he (Heath) requested Morrison to unite with him in the purchase of the quarter section on joint account, which the latter refused to do. He further alleged that he purposely refused or neglected to contribute his share of an instalment of rent falling due

39

on March 1, 1902, and that by reason of such failure that instalment was not paid and the term was forfeited, and that the purchase from Gray and his own purchase from Hunter were made after the occurrence of the forfeiture, and that both of them were, or at any rate the latter was, in good faith. But the conveyance by Hunter to Heath was a quitclaim deed, and the answer merely alleges that the latter paid "a valuable consideration" therefor, which is denied by the reply, and our attention has not been called to any evidence on the subject, so that we think that Heath must be treated as standing in the shoes of Hunter. Moreover, his testimony concerning other features of the transaction is denied by Morrison and but illy harmonizes with admitted facts.

Hunter relies mainly, if not solely, upon the above quoted covenants against subletting and releasing and the alleged forfeiture for nonpayment of rent, but we doubt very much if there was a substantial breach of the former, and no attempt was made to enforce the forfeiture, and we are satisfied that in no event, under the circumstances disclosed by the record, is Hunter in a position to avail himself of either breach or forfeiture to the injury of the plaintiff for his own benefit. He occupied a somewhat inconsistent attitude with Morrison, on the one side, and Gray, on the other, which put him in confidential relations with both and required of him the exercise of the most scrupulous good faith toward both. He knew that Gray was willing to sell the land for $1,200, but concealed that fact from the plaintiff, whom he knew to be relying upon his assistance in making the purchase, until he learned that the latter had ascertained the price from another source, and then speedily availed himself of an opportunity to procure the title for the same sum for himself, so as to deprive the plaintiff of his opportunity. This, we think, he ought not to be permitted to do. In thus deciding we place no stress upon the clause in the lease giving the lessee the "refusal of buying," but base our decision entirely upon the confidential relations between the parties. The district

court dismissed the action. We recommend that the judgment be reversed and the cause remanded, with instructions to render a decree for the plaintiff, pursuant to the prayer of the petition, upon his paying to the parties entitled thereto the purchase price of $1,200, with interest.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded, with instructions to render a decree for the plaintiff, pursuant to the prayer of the petition, upon his paying to the parties entitled thereto the purchase price of $1,200, with interest.

REVERSED.