GEORGE GESSELMAN, APPELLANT, V. R. WALTER PHILLIPS ET AL., APPELLEES.

FILED MAY 26, 1923. No. 22379.

1. **Vendor and Purchaser:** OPTION CONTRACT. One of the essential elements of an option contract for the purchase of land is that the party giving the option parts with the right, for a limited time, to sell his land to any one other than to the party to whom the option is given.

2. **Principal and Agent.** The law will not permit an agent to profit out of the subject of the agency, at the expense of his principal, beyond the agreed commission for his services.

3. **Brokers:** DUTIES: GOOD FAITH. Where a contract between a landowner and real estate broker provides that the latter shall receive a stipulated commission in the event of a sale, and also gives him an option to purchase the land, he cannot, while acting as the agent, exercise the option to purchase without making full disclosure to his principal of any opportunity he may have to sell the land to the principal's advantage; nor can the agent, after having contracted for the sale of the land to a third party at an advanced price, exercise the option to purchase the land to the detriment of his principal.

APPEAL from the district court for Hitchcock county: CHARLES E. ELDRED, JUDGE. *Reversed, with directions.*

*Harry L. Lehman, Lambe & Butler* and *Walter D. James,* for appellant.

*Cordeal & Colfer, contra.*

HEARD before MORRISSEY, C. J., ROSE, ALDRICH and GOOD, JJ., BEGLEY, District Judge.

GOOD, J.

Plaintiff, George Gesselman, brought this action against R. Walter Phillips, James W. Mansfield and Charles W.

Burton, defendants, for an accounting for money alleged to have been received by them as his agents in a sale of land. Defendants prevailed, and plaintiff has appealed.

In September, 1919, plaintiff was the owner of 600 acres of land in Hitchcock county, Nebraska, that was incumbered by three mortgages. Plaintiff made application to defendants for a loan to take up the third mortgage, which was in process of foreclosure and which amounted to about $1,300. Their negotiations resulted in defendants' agreeing to take up the mortgage and carry the same for plaintiff, and to secure them the plaintiff, on September 22, 1919, executed a warranty deed conveying to the defendants 600 acres of land. At the same time the parties signed a separate contract, in the preparation of which a printed form of an agreement for sale of real estate was used. Part of the printed form was filled in, indicating an agreement to sell the 600 acres of land to the defendants for a consideration of $15,000. The following provisions were inserted in writing:

"This is an exclusive option on this land and if sold otherwise party first part agrees to pay second parties one-thousand dollars, same as if sold by second parties. This is an option on this land for until March 1, 1920, and in case this is not sold by said date this is null and void as to both parties. If this land is sold within said time the first party agrees to pay second parties one-thousand dollars commission. Possession, if sold, to be given March 1, 1920. Deed to be given at this time. Title to be returned to first party upon payment of note & mortgage of about thirteen-hundred dollars with interest from this date at 10 per cent., taken up by second parties, if paid by March 1, 1920. Otherwise title to be absolute in second parties. In case of sale of land the $1,300 advanced and one-thousand dollars are to be paid by (to) second parties. In case of failure to pay $1,300 March 1, 1920, second parties are to assume $3,500 to Southwick Loan & Trust Co. only."

On the 11th day of October, 1919, the defendants sold

the land in question to one Weidner for $18,000. Defendants have accounted to plaintiff for the sum of $14,000 and no more. The plaintiff insists that defendants were acting as his agents in the sale of the land and that they should account for the full $18,000, less $1,000 for commission; in other words, that he is entitled to recover $3,000 more from the defendants. The defendants in their amended answer allege that the contract, above referred to, gave them an exclusive option to buy the land at any time prior to the 1st day of March, 1920, at the sum of $14,000, and that they exercised this option on the 4th day of October, 1919, on which date they claim to have paid to plaintiff the sum of $1,000, as part of the purchase price.

1. Somewhat depends on a proper construction of the above mentioned contract. Plaintiff contends that it is an exclusive agency contract, whereby defendants were given exclusive right to act as brokers in the sale of the land; and defendants insist that it is an exclusive option contract, which gave them the absolute right, at any time before March 1, 1920, to purchase the land for $14,000. In our opinion, neither contention is correct. The contract partakes of the nature of both an option and brokerage contract. It is clear that it could not have been an exclusive option contract, because, by its terms, it contemplates that a sale may be made to a third party either by defendants or others. This would be inconsistent with the idea of an exclusive option. One of the essential elements of an option contract for the purchase of land is that the party giving the option parts with the right, for a limited time, to sell his land to any one other than to the party to whom the option is given. *Pollock v. Brookover*, 60 W. Va. 75, 6 L. R. A. n. s. 403; 27 R. C. L. 334, sec. 31.

The contract also provides that, in the event of a sale of the premises before March 1, 1920, whether made by defendants or others, defendants shall have a commission of $1,000. This clearly contemplates that defendants are to

act as agents and receive a commission for their services, but also contemplates that it is not an exclusive agency.

2. The agency part of the contract has the effect of placing the defendants in a trust or fiduciary relationship to the plaintiff, which requires of them unswerving fidelity and absolute good faith in their dealings with their principal. The law will not permit an agent to profit out of the subject of the agency, at the expense of his principal, beyond the agreed commission for his services. *State v. State Journal Co.,* 77 Neb. 752; *Wells v. Cochran,* 84 Neb. 278.

3. While defendants were acting as agents, they were required to make full disclosure of any opportunities they may have had to sell the land that would be to the advantage of the plaintiff, before they could exercise their option to purchase the land. They could not, after having contracted for the sale of the land at an advanced price, exercise the option to purchase it themselves from the plaintiff to his detriment. It becomes important, therefore, to determine when, if ever, the defendants exercised their option to purchase the land from plaintiff. If they did exercise the option and did purchase the land prior to any sale to Weidner, or to knowledge that he would buy it at an advanced price, then they would be entitled to any profit made upon the sale of the land; and, upon the other hand, if they had contracted to sell to Weidner, or knew that he would purchase the land, at any sum more than $15,000, prior to the time they exercised their option, then they must account to the plaintiff for the full purchase price realized, less their brokerage commission.

The evidence respecting the exercise of the alleged option by defendants is in sharp conflict. They testify that they agreed with plaintiff on the 4th day of October to take the land at $14,000, and that plaintiff, to induce them to do so, agreed to and did give them 50 bushels of wheat. The defendants are corroborated in this by some other witnesses and by the circumstance that they produced a check, which was delivered to plaintiff, dated

October 4, for $1,000, and on which is written in the lower left-hand corner the words: "Part payment on ranch bought by Mansfield & Phillips over on Driftwood." Plaintiff admits the receipt of this check, but insists that it was not delivered to him until the 15th day of October, and in this he is corroborated by the testimony of his wife and daughter. Plaintiff's position is also corroborated by some other circumstances. For instance, it was shown by the testimony that he was in straitened circumstances for money at the time of these transactions. The evidence shows conclusively that the check was deposited by him in his bank on the 16th day of October. It is rather strange that one in such straitened circumstances as plaintiff was would carry the check for 11 or 12 days before cashing it. Again, the check in evidence does not bear any indication of having been worn, as it would naturally be if it had been carried for that time. But, to our mind, the most striking circumstance corroborating the position of the plaintiff is a statement rendered by defendants on the 23d day of March, 1920, when they were accounting to the plaintiff for the proceeds of the sale. In that statement they credit plaintiff with the sale price, $15,000, and charge him with a commission of $1,000, and the other items of payment, mortgages, etc., to the aggregate of $15,000. This statement made by them long after the transaction is inconsistent with the position they now take that they purchased the land outright for $14,000. If they purchased the land themselves, they would be entitled to no commission. Again, when they filed their original answer in this action, they alleged therein that they exercised their option to purchase the land on or about the 1st of November, 1919.

We are of the opinion, after careful consideration of all the evidence, that the defendants contracted to sell the land to Weidner for $18,000 prior to the time they exercised their alleged option. This being true, they were not entitled to anything except their commission, as agents, in the sum of $1,000. They have retained $4,000,

and should therefore account to the plaintiff for the sum of $3,000.

Plaintiff claims that defendants are also indebted to him for 50 bushels of wheat, which was turned over to them, to be planted upon the premises, but which they sold and converted to their own use. The evidence discloses that there was a load of wheat, amounting to 50 bushels, turned over to defendants, but there is no evidence in the record as to its quality or value. Because of his failure of proof in this respect, plaintiff cannot recover for the wheat.

The judgment is reversed and the cause remanded to the district court, with directions to enter judgment for plaintiff in the sum of $3,000 and interest accruing, at 7 per cent. per annum, from March 1, 1920, to the date of entering judgment.

REVERSED.