GREENOUGH v. WILLCOX.

1. APPEAL AND ERROR — QUESTION RAISED FOR FIRST TIME IN
   SUPREME COURT NOT CONSIDERED.
   An objection by plaintiff that the pleadings are not suf-
   ficient to admit of the claim made by defendant comes too
   late, where made for the first time in a supplemental
   brief filed in the Supreme Court.

2. SAME—FACTS NOT IN RECORD NOT CONSIDERED ON APPEAL.
   Facts not in the record, contained in plaintiff's supple-
   mental brief, may not be considered by the Supreme
   Court.

¹Appeal and Error, 3 C. J. § 623; ²Id., 4 C. J. § 2362.

3. CONTRACTS—CONSTRUED MOST STRONGLY AGAINST MAKER.

A contract must be construed most strongly against the party who prepared it.

4. BROKERS — PRINCIPAL AND AGENT — VENDOR AND PURCHASER — OPTIONS.

A contract listing property with a real estate broker for sale, containing an option provision for the purpose of facilitating a sale as an incident thereto, is a contract of agency rather than an option to sell.

5. SPECIFIC PERFORMANCE—ASSIGNEE OF BROKER'S LISTING CONTRACT NOT ENTITLED TO SPECIFIC PERFORMANCE.

The assignee of a real estate broker's so-called option contract to purchase real estate is not entitled to specific performance, where it clearly appears that said instrument is not an option but is a listing contract entitling the broker to a certain commission in case of sale, although it does contain an option provision for the purpose of facilitating a sale.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted January 4, 1927. (Docket No. 2.) Decided April 1, 1927. Rehearing denied July 29, 1927.

Bill by A. O. Greenough against George D. Willcox for specific performance of an alleged optional land contract. From a decree for plaintiff, defendant appeals. Reversed, and bill dismissed.

*Andrew L. Moore,* for plaintiff.

*Perry & Lynch,* for defendant.

Defendant owned approximately two acres of land in Royal Oak having a frontage of 284.3 feet. He did not live at Royal Oak. Harle Von Eberstein was a real estate broker living and operating there. For some time plaintiff's property was listed with him for sale at varying prices. Most of these list-

---

[3]Contracts, 13 C. J. § 516; 6 R. C. L. 854; 2 R. C. L. Supp. 229; 4 R. C. L. Supp. 447; 5 R. C. L. Supp. 374; 6 R. C. L. Supp. 416; [4]Brokers, 9 C. J. § 17 (Anno); 3 A. L. R. 576; 27 R. C. L. 334; 3 R. C. L. Supp. 1511; 5 R. C. L. Supp. 1470; [5]Specific Performance, 36 Cyc. pp. 605, 615.

ings were in substantially the same form as the one
we shall presently quote. He had not been able to
sell the Willcox property. The instrument here in-
volved was actually executed in January, 1925, al-
though bearing date of May 27, 1924. It was pre-
pared by defendant or under his direction and is said
to have been made to take the place of one of earlier
date and to include a clause with reference to title
insurance not found in the earlier one. The instru-
ment is as follows:

"ROYAL OAK REAL ESTATE BOARD.
Standard Blanks          Form 3          Option.
"It is hereby agreed between George D. Willcox,
hereinafter designated as the owner, and the Acorn
Realty Company, hereinafter designated as the pur-
chaser, as follows:

"That said owner in the consideration of the sum
of one dollar ($1) to him in hand paid by the pur-
chaser, the receipt whereof is hereby acknowledged,
does hereby agree that at any time prior to June 1,
1925, at 12 o'clock noon, he will sell and convey to
the purchaser or his assigns land situated in the city
of Royal Oak, county of Oakland, Michigan, described
as follows:

"Commencing at a point on a line between section
15 and 22 town and county aforesaid at a point on
S. E. corner of lands heretofore conveyed by Reuben
Russel to Elmer Russel recorded in liber 179, page 329,
Oakland county register's office, that being a point 7
chs. 35.5 links E. of the S. W. corner of said sec. 15;
thence E. on sec. line 4 chs. 30 links; thence N. at right
angles with said section line 4 chs. 75 links; thence
W. parallel with section line 4 chs. 30 links; thence S.
at right angles with section line 4 chs. 75 links to place
of beginning containing 2.04 acres, for the sum of
(a) twenty-five thousand ($25,000) dollars.

"If the purchaser desires to exercise the foregoing
option, he shall accept the same in writing on or be-
fore the day above fixed and at that time pay the sum
of one thousand ($1,000) dollars upon the purchase
price thereof.

"Upon the receipt of such acceptance and payment

the owner will immediately procure a complete warranty deed or a quitclaim deed with policy of title insurance and abstract of title to such premises certified to a date not later than the date of the acceptance of this option showing an unincumbered marketable title to such premises in the owner. (*b*) Subject to no incumbrance whatever, and deliver the same to the purchaser for examination as soon as such abstract can be procured from the abstractor.

"If the title shown by such abstract is found marketable and unincumbered, the sale shall be closed within ten (10) days after delivery of such abstract to the purchaser (*c*) by delivery of warranty or quitclaim deed and payment of balance of the purchase price in cash, or in lieu of all cash as above provided owner agrees to accept a total of 50% of purchase price in cash and take back first mortgage for $12,500 on the property herein described, the same to bear interest at the rate of 6% and to be due and payable on or before five years from date, and to carry a release clause embodied therein whereby mortgagee agrees to give releases on parcels of property at the rate of 15 cents per square foot.

"Said owner agrees that he will not during the life of the foregoing option sell, convey, mortgage or otherwise incumber the said land or any part thereof or do or permit to be done any act of the thing whatsoever to diminish or incumber the title to the said land.

"Upon a failure to exercise the foregoing option within the time and in the manner above provided, the rights of the purchaser to said land and said payment shall cease and be void.

"It is understood that the above named purchaser is a broker, acting for an undisclosed principal, and if a sale of the premises is effected under the foregoing option the owner agrees to pay to him a commission of five per cent. (5%) of the selling price of said land.

"In witness whereof the said owner has hereunto set his hand and seal this 27th day of May, 1924.

"In the presence of R. I. Simons.

"GEORGE D. WILLCOX    (L. S.),
"H. VON EBERSTEIN    (L. S.)."

Some three weeks after Von Eberstein had procured defendant's signature to this renewal or substituted

contract he executed an assignment of the "within option" to plaintiff for a purported consideration of $1,250. The undisputed testimony shows that the property was worth at this time at least $50,000. Some time afterwards plaintiff tendered to defendant $12,500 in cash and a mortgage on the premises for like amount and demanded conveyance. This was refused and this bill for specific performance was filed. From a decree granting such relief, defendant appeals.

FELLOWS, J. (*after stating the facts*).   In a supplemental brief filed in this court, plaintiff's counsel urges that the pleadings are not sufficient to admit of the claim made by defendant, but no such objection was made in the court below.   It is too late now to make such an objection.   In the same brief counsel also informs the court of facts not in the record tending to explain the defendant's testimony on the question of value of the premises.   This can not be considered.   In the court below defendant's counsel quite clearly outlined his position and the record is quite convincing that at first blush it did not appeal to either the court or to plaintiff's counsel.   However, briefs were filed and the case was given careful consideration by the trial judge who filed an exhaustive opinion, in the early part of which he states:

"At the time of hearing I was of the opinion that there was but little doubt that the instrument must be construed as an option, but I am frank to say, after examining the authorities, that the question is a close one."

The contention of defendant's counsel, briefly stated, is this:   That this is a listing contract creating the relation of broker and principal; having been prepared by Von Eberstein should be most strongly construed against him; that the provisions with reference to the option are but incidents to the listing contract and designed to facilitate it and the sale of the

property; that the relation of principal and agent having been created by the instrument the relations were fiduciary in their character, and the agent may not take advantage of them to his own aggrandisement and to the loss of the principal.

That the contract must be construed most strongly against the party who prepared it is too well settled to require the citation of authorities. That the option provision was to facilitate the making of a sale, was but an incident to it, and that the contract was one of agency must, we think, be held, unless we are prepared to overlook the uniform holdings of this and other courts that the fiduciary relations exist between the principal and agent, and that the agent may not fatten his pocket at the expense of his principal. Unless the option provision serves this purpose, it serves no honest purpose. Von Eberstein was a real estate broker and so far as the record discloses he was not buying and selling on his own account. His own testimony gives color to the claim that this provision was inserted to facilitate the sale. Under plaintiff's construction of the contract, Von Eberstein could, if the value of the property advanced, exercise the option either himself or by assignment to a friend to be exercised by him, sell the property at the advance and pocket the advance in price, or, if it did not advance, could sell and collect his commission, and that it rested with him as to which course he should pursue. Such a construction would permit a juggling of the principal's property by an agent and would be so subversive of the fiduciary relations and the recognized duty of an agent that it should not be indulged unless compelled by the strict rules of law. We do not think the strict rules of law require such construction.

We approve the rule laid down in 31 Cyc. p. 1203, where it is said:

"A common mode of sale, especially of real estate,

is by an option bond by the terms of which the prospective purchaser secures an option for the purchase of the property on given terms within a stated time. Such a contract does not *per se* constitute the option holder the owner's agent, and if the transaction is really what it purports to be it creates the relation of possible vendor and purchaser. But where the option bond is a mere form of agency given to secure to the agent control of the negotiations, or to lend to him the appearance and character of a purchaser for its effect on third persons with whom the agent may negotiate, and it was not contemplated that the agent should really acquire any title or become the purchaser, then the contract is one of agency, and not of sale. And it has been said that the courts incline to construing such a contract as an agency rather than as a prospective sale. Even where the language purports to provide for a sale, yet if the circumstances show an intent to create an agency, it will be construed as creating the relation of principal and agent."

In *Chezum* v. *Kreighbaum,* 4 Wash. 680 (30 Pac. 1098, 32 Pac. 109), the court had before it the question of whether the agreement was one of agency or of option. It was held that it was one of agency and it was said by the court, speaking through Mr. Justice Hoyt:

"Courts are inclined to construe a contract of this kind to be that of agency rather than a simple option on the part of the person acting thereunder. And however strong the language used by the owner may be, yet if there is anything in connection with the contract which shows an intent to create an agency rather than to make a sale of the property, the person acting thereunder will not be allowed to get any benefit therefrom other than such compensation as may be awarded to him by the contract."

In *Arnold* v. *National Bank,* 126 Wis. 362 (105 N. W. 828, 3 L. R. A. [N. S.] 580), an option had been given to real estate agents by the owner during the negotiations for the sale of the land. It was held by the court (quoting from the syllabus):

"A so-called 'option' upon lands, given by the owner to real-estate agents, for a limited time at a certain net price to the owner, is construed, under the evidence, to be merely a promise of exclusive agency during such time and an agreement to pay as commissions all sums which a purchaser found by the agents should be able and willing to pay in excess of the net price named."

In disposing of this branch of the case it was said:

"The evidence is also undisputed, being mainly documentary, that the plaintiffs and defendant met and dealt upon the basis of an authority or employment of the plaintiffs to find a customer, and that the so-called option meant no more than a promise of exclusive agency during its period. This construction of the transaction has the support of authorities generally."

In *Hanscom* v. *Blanchard*, 117 Me. 501 (105 Atl. 291, 3 A. L. R. 545), the instrument like the one before us contained in language an option and an agreement to pay a commission. The action was brought to recover the commission and the defense interposed was that the instrument was an option and not a contract of agency. The court, however, held that it was not an option but was an agreement to pay a commission. In *Alger* v. *Keith*, 105 Fed. 105, the action was one for fraud. The actual participants in the fraud were Sheridan, Green & Company who were real estate agents. The owners had given them an option and insisted they were optionees and not their agents. The complainant insisted that they were acting for the defendants, that the option was given to facilitate the transaction and to secure them their commission and that the owners were liable for the fraud of their agents. The claim of complainant was sustained. Judge Lurton who wrote for the court said:

"All these cases cited go upon the solid ground that, if the facts show that the option or title bond was in substance a mere authority to sell for the owner, the mere form of the transaction will not change the true relation between the parties. Such an option con-

tract was given by John F. Anderson to Sheridan and Green. But upon all of the evidence we reached the conclusion that it was a mere form of agency and that the relations, therefore, existing were not, in substance, changed. It was, as we conclude, intended that Sheridan and Green should sell the lands for Anderson, the option agreement and dependent title bond being a mere form for securing to them all they could realize over an agreed price."

In *Rodman* v. *Manning*, 53 Or. 336 (99 Pac. 657, 1135, 20 L. R. A. [N. S.] 1158), pursuant to an agreement with a real estate agent, the owner who lived at a distance had executed a deed to him and sent it to the bank to be delivered on payment of the agreed price less the commission. Later he countermanded the instructions and the suit was brought for specific performance of the agreement to convey. It appeared that the agent had managed to sell the property at an advanced price. The court recognized the controlling question to be whether the agent was acting as a broker, and, regarding that question as being largely controlled by the further question of whether he was to receive a commission, held that the relation of principal and agent existed and refused specific performance. In *Phillips* v. *Insurance Co.*, 208 Mich. 84 (7 A. L. R. 1606), the owner had given a deed to a real estate agent to facilitate the sale of the property. A loss by fire occurred and the insurance company defended on the ground of change of title without the consent of the company in violation of the terms of the policy. It was held that inasmuch as the deed was given to facilitate the sale and with no intent to change the title, the title had not, under the circumstances, changed, and the policy was not breached. See, also, *Hough* v. *Richardson*, 3 Story (U. S.), 659; *Mason* v. *Crosby*, 1 Woodb. & M. (U. S.) 342; *Riemer* v. *Rice*, 88 Wis. 16 (59 N. W. 450).

The plaintiff's contention finds support in *Robinson*

v. *Easton, Eldridge & Co.,* 93 Cal. 80 (28 Pac. 796, 27 Am. St. Rep. 167), followed in a later case, and *Carter* v. *Love,* 206 Ill. 310 (69 N. E. 85).    But in both cases it was agreed that the agent should receive as his commission all he received over and above a fixed price.    In the instant case it was agreed that the agent should receive five per cent. of the selling price.    *Kellow* v. *Jory,* 141 Pa. 144 (21 Atl. 522), also sustains plaintiff's contention, but specific performance was refused on the ground of laches.

From what has been said it follows that plaintiff's bill for specific performance must be dismissed.    Defendant will recover costs of both courts.

SHARPE, C. J., and SNOW, STEERE, WIEST, CLARK, and MCDONALD, JJ., concurred.    BIRD, J., did not sit.