WILLARD I. KORTRIGHT, APPELLEE, v. MUTUAL LIFE INSURANCE COMPANY, APPELLANT.

FILED AUGUST 11, 1932. No. 28086.

*Frederick L. Allen* and *Brown, Fitch & West,* for appellant.

*Lovely & Lovely, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

HASTINGS, District Judge.

On January 16, 1917, the Mutual Life Insurance Company, appellant, and Willard I. Kortright, appellee, entered into a contract in writing whereby Kortright was appointed its agent for the purpose of soliciting insurance and collecting and remitting first year premiums thereon under the rules and regulations of the defendant company. For his services the defendant company agreed to pay him commissions on first year premiums secured and remitted by him in cash. The contract prohibited rebating in any form, directly or indirectly, by Kortright. Later, on December 30, 1929, that contract was superseded by another almost identical in terms. Sometime prior to the 20th day of July, 1929, the plaintiff entered into negotiations with one Rufus E. Lee for a life insurance policy of $150,000. Lee at that time had $665,000 of life insurance in the defendant company on which a large amount of dividends had accumulated. As an inducement to Lee to take out an additional $150,000 life insurance policy the plaintiff advised him how he could take out such additional life insurance by using his accumulated dividends on other policies, then held by the defendant company, to pay the premium. On the 20th day of July, 1929, Lee made written application to the company for a $150,000 ordinary life insurance policy and at that time gave the plaintiff an order on the defendant company for the first year's premium, amounting to $9,108, payable out of the dividends then accumulated on his other policies. On the 20th day of August, 1929, the defendant company issued and delivered to Lee a life insurance policy for $150,000 which was accepted by Lee. Under the terms of the contract of agency then in force between Kortright and the defendant company his commission amounted to $4,554, which was paid to him by the defendant company. Some time after the policy was issued and accepted by Lee, Kortright was called to Lee's office by Lee, and Lee then demanded that all of the commission received by Kortright in excess of $1,000 be re-

bated to him, it being contended by Lee that at the time the application for the insurance was made Kortright promised to rebate all of his commission in excess of that sum. Kortright denied that any such agreement had been made. Lee thereupon went to the manager of the defendant company in Omaha and insisted that the manager bring pressure on Kortright to give him the rebate. Lee made it plain that if he was given the rebate he would be satisfied; if not, he would take the matter up directly with the defendant company and ask that his policy of insurance be canceled. Failing to get his rebate, Lee, on November 16, 1929, wrote the defendant company that he was induced to take the policy in question by reason of an agreement he had with Kortright to rebate all of his commission except $1,000 and that he would not have taken the insurance but for such agreement; that he had other similar transactions with Kortright and Kortright had always carried out his part of the agreement. He asked that the policy be canceled and that the unearned premium should be returned to him on a *pro rata* basis. The defendant company then instituted an investigation to determine the truth of the charge made by Lee and, after receiving the statements of the manager of its Omaha office and Kortright, wrote its manager that in view of his statements and those of Kortright it would seem there was no foundation for the claim made by Lee, and asked their manager to see Lee and relieve his mind of any thought that there was anything that could be done. Thereafter Lee employed a lawyer to present his claim to the company and on January 22, 1930, the company wrote its manager at Omaha that from their investigation through correspondence they found that the insured's contention was supported by abundant testimony and the transaction should be undone, after providing for a *pro rata* charge for the insurance, the policyholder placed where he was before the new insurance was undertaken, and instructed the manager to proceed with undoing the transaction. The policy was canceled as of

the date of December 3, 1930, and the defendant company refunded to Lee the sum of $6,502.10 and proposed to allow the plaintiff a commission in the sum of $1,302.95 instead of $4,554. The defendant company demanded of the plaintiff that he pay to it the balance of the commission received by him, in the sum of $3,251.05, which he refused to do. He was then notified that commissions as they became due under his contracts would be applied to the payment of that sum. The plaintiff thereupon resigned as the agent of the company and thereafter brought this action on his contracts, copies of which he attached to his petition, to recover commissions then due him upon renewal premiums amounting to the sum of $1,086.89.

The defendant company answered admitting this amount was due the plaintiff under his contracts, and alleged, by way of counterclaim, in substance, that certain rules and regulations of the company, which were set out, were, by the terms of the contracts, made a part thereof, and alleged the issuance of the policy of insurance to Lee, the payment of the first year's premium by him, and that plaintiff was entitled to receive and did receive, as commission therefor, the sum of $4,554. Defendant further alleged that, on complaint of Lee that misrepresentations had been made to him in procuring the insurance and that plaintiff had refused to carry out an agreement that he had made with Lee, the company had recalled the policy and canceled it as of December 3, 1930, refunded Lee the sum of $6,502.10 of the premium paid by him, and that plaintiff was entitled to a commission on said policy in the sum of $1,302.95 instead of $4,554, and that by reason thereof plaintiff was indebted to the defendant on account of said transaction in the sum of $3,251.05.

The reply and answer of the plaintiff denied all allegations of the answer and counterclaim not admissions of allegations of plaintiff's petition.

On the trial the verdict was for the plaintiff for the amount claimed and against the defendant on its counterclaim. From the judgment thereon defendant appeals.

The defendant assigns as error: (1) The overruling of the motion of the defendant for a directed verdict; (2) the giving of instruction No. 4.

A consideration of the errors assigned requires a construction of the contract of agency between the plaintiff and defendant in force at the time of the issuance of the policy to Lee. The right of the defendant to recover on its counterclaim for the part of the commission paid plaintiff and later returned to the insured is to be determined according to that contract. The defendant company predicates its right to recover on its counterclaim upon two rules which were a part of the contract in question. We do not find it necessary to set out the entire contract.

The rules upon which the defendant relies are as follows:

"216. When Paid. Commissions are paid on first year premiums collected on policies delivered and accepted by applicants and not recalled by the company.

"217. Commission not Allowed. Claims for commissions on applications on which policies have not been issued, or on policies recalled for cancelation, will not be allowed."

In the case of the *People's State Bank v. Smith*, 120 Neb. 29, we held: "An ambiguity in a written contract prepared by one of the parties should ordinarily be resolved in favor of the party who did not prepare it and had no choice in the selection of the words used nor in the arrangement of the sentences and punctuation."

The rule announced in that case will be applied in construing these rules.

It is the contention of the defendant company that, since Lee, a large policyholder with the company, made complaint to it that plaintiff had agreed to rebate to him a large part of the commission, was dissatisfied because plaintiff failed to carry out such agreement and had presented evidence tending to establish such agreement, it was proper and necessary, as a matter of good business

and to its best interests, to recall and cancel said policy, and that it had a right, under the rules in question, to recall and cancel said policy for that reason and recover from the plaintiff the *pro rata* share of the commission included in the premium returned. We cannot give our assent to this contention.

It is evident that rule 216 was intended to fix the time when commissions on first year premiums would be paid. Under the rule commissions were to be paid when the premium had been collected, the policy delivered and accepted by the applicant, and was not to be paid on policies that had been recalled before becoming effective as a contract.

Rule 217 was intended to make clear that claims for commissions would not be allowed on policies which had not been issued, although applications had been made therefor, or on claims for commissions on policies which had been recalled for cancelation prior to the time the policy became effective.

Obviously this rule was not intended to apply to those instances where the policy had become effective pursuant to the terms of the application and the commission had been paid. A claim for a commission would not exist where it had been paid. These rules deal exclusively with claims for unpaid commission and as to when commission is allowable and payable. The "recall" of policies referred to in the rules means the recall by the company where the policies had not become effective as contracts of insurance. The printed part of the application in this case is presumably like all other applications for like insurance in defendant company and provides:

"The proposed policy shall not take effect unless and until delivered to and received by the insured, the beneficiary or by the person who herein agrees to pay the premiums, during the insured's continuance in good health and unless and until the first premium shall have been paid during the insured's continuance in good health, except in case a conditional receipt shall have been issued as hereinafter provided."

These provisions of the application fix definitely when a policy becomes effective as a contract of insurance. It is contemplated that a policy might be issued on an application and received by the insured but would not be effective until the premium is paid. Until a policy became effective as a contract of insurance, as provided in the application, the right to recall resided in the company and it was such a recall by the company as the rules cover. The policy in this case contains no provision giving the defendant company the right to cancel it after it became effective as a contract of insurance.

"The right of an insurance company to cancel one of its policies is altogether different from a right of rescission. The latter right can be exercised only when some legally sufficient cause for it exists, such as fraud or false representations. But a right to cancel may be exercised at the mere option of the company and without assigning any reason. This right, however, exists only when it is expressly reserved to the company in the policy, and then can be exercised only in such a manner and on such terms as are prescribed in the policy." 2 Black, Rescission and Cancelation (2d ed.) 1207, sec. 480.

If the recall and cancelation referred to in the rules was intended to cover a case where a policy had become effective as a policy of insurance, then some provision would have been made in the policy for its recall and cancelation by the defendant company at its election. The policy contains no such provision, and, having become effective as a policy of insurance, the right to recall ceased. Thereafter the right of the defendant company to cancel would be dependent on rescission for some legally sufficient cause.

In the instant case the policy was not recalled by the defendant company, before it became effectual, for cancelation; but the contract was consummated and thereafter rescinded and canceled at Lee's request on the terms proposed by him, on the sole ground that he claimed he had been promised a rebate of a part of the commission

which had not been paid to him by the plaintiff. While the defendant company and Lee might agree to a rescission of the contract of insurance and the cancelation of the policy for any reason or no reason at all, they could not thereby deprive the plaintiff of the commission paid to him by the company unless such rescission was for some legally sufficient cause from which an agreement to repay the commission would be implied by law. An agreement to rebate, such as Lee claims was made, is expressly forbidden by section 44-1105, Comp. St. 1929, and by section 44-1120, Comp. St. 1929, is made a misdemeanor punishable by fine or imprisonment. The claimed agreement to rebate was illegal and no recovery could be had thereon by Lee against the plaintiff, nor could Lee compel a rescission of the contract of insurance or a cancelation of the policy on that ground. Such an agreement is not a ground recognized in law or in equity whereby the defendant company might maintain an action for a rescission or cancelation of the policy. There is nothing in either rule providing that, after the policy became effective as a contract of insurance and the commission is paid to the agent, on a rescission and cancelation the agent was to refund to the defendant any part of his commission included in the unearned premium returned to the insured. The company prepared the rules, which are a part of the contract, and if it desired to cover cases of this kind it should have so provided therein in specific terms. The parties having failed to contract in this respect, we cannot remake the contract for them.

Where, as in this case, the plaintiff, as agent of the defendant company, had earned and been paid his commission under his contract with the defendant company and the contract of insurance is rescinded and the policy canceled by the mutual consent of the insurer and insured without any legally sufficient grounds for a rescission of the contract or cancelation of the policy, no agreement will be implied that the plaintiff will repay to the in-

surer the portion of his commission included in the unearned premium returned to the insured.

We have not been cited to any case, nor have we been able to find any, which supports defendant's contention.

We have been cited to the following cases by the defendant as supporting its contention: *Milwaukee Mechanics Ins. Co. v. Warren,* 150 Cal. 346; *Ryder-Gougar Co. v. Garretson,* 53 Wash. 71; *National Union Fire Ins. Co. v. Nason,* 21 Cal. App. 297; *Salley v. Amicable Life Ins. Co.,* 4 S. W. (2d) (Tex. Civ. App.) 35; *Hill v. Aetna Ins. Co.,* 180 Ark. 401. A careful examination thereof shows the cases not to be in point. In each of the cases cited the contract between the agent and the insurance company expressly provided that the agent should repay to the company the amount of the commission on premiums returned to the insured by the insurer on canceled policies.

In 14 R. C. L. 871, sec. 42, it is said: "But when a policy has been canceled and the unearned premiums returned to the assured, the insurer cannot recover from the agent who negotiated the insurance any part of the commission paid, unless it was so agreed." See, also, *Hay v. Insurance Co.,* 167 N. Car. 82, Ann. Cas. 1916A, 1129, and note.

We hold that, where an insurance company has rescinded a contract of insurance and canceled the policy without a legally sufficient cause therefor and returned to the insured the unearned premium thereon, it cannot recover any part of the commission paid to the agent included therein, in the absence of an express agreement to that effect.

It follows from what has been said that the judgment entered in this case is the only judgment warranted in law. That being true, the defendant was not entitled to a directed verdict on his counterclaim, nor was there prejudicial error committed in the giving of the instruction complained of. The judgment is therefore

AFFIRMED.