### BRAID *v.* BISHOP.

BROKERS—COMMISSIONS—WHEN COMMISSION EARNED.
> Where property owner agreed in writing to pay broker commission on sale of property if option was accepted by certain date, and said option was accepted, but consummation of deal was postponed at owner's request, and later owner refused to go through with sale, although broker's client was ready, willing, and able to purchase on owner's terms, broker is entitled to agreed commission.

Appeal from Lapeer; Smith (Henry H.), J.   Submitted November 3, 1932.   (Docket No. 94, Calendar No. 36,684.)   Decided January 3, 1933.

Assumpsit by Earl Braid against Frank Bishop for real estate broker's commission.   Judgment for plaintiff.   Defendant appeals.   Affirmed.

*Geo. W. Des Jardins* (*Eugene E. Johnson,* of counsel), for plaintiff.

*Herbert W. Smith* (*Earl I. Heenan,* of counsel), for defendant.

As to when broker's commission is earned, see annotation in 43 L. R. A. 603; 44 L. R. A. 321, 606; 23 A. L. R. 856.

BUTZEL, J. Charles Bingham, a realtor of Birmingham, Michigan, being desirous of obtaining a tract of property in Bruce township, Macomb county, for a wealthy client, sought the services of Earl Braid, a broker, of Rochester, Michigan, the plaintiff herein. Although Braid knew that Bingham was also a real estate broker, he did not know whom he represented. Included in the property that Bingham wished to acquire were 160 acres belonging to Frank Bishop, defendant. According to Braid's instructions, he was to collect his commission, if possible, from the seller. Upon being approached by Braid, Bishop demanded $150 an acre for his property, in accordance with a survey to be made. He further agreed to pay a 5 per cent commission. The following option was signed by Bishop and wife:

"The undersigned, in consideration of the sum of 'a' $50, the receipt of which is hereby acknowledged, agrees any time prior to March 1, 1929, at 12:00 o'clock m. to sell and convey an unincumbered, marketable title to land situate in the village of Bruce, Macomb county, Michigan, described as: west ½ of northwest ¼ section 17, containing 80 acres more or less, the northeast ¼ of northwest ¼ section 17, containing 40 acres more or less, also the northwest ¼ of northeast ¼ section 17, containing 40 acres more or less, whole parcel containing 160 acres more or less all in section 17, Bruce township, Macomb county, subject to the restrictions upon the use of the same to Chas. A. Bingham, hereinafter referred to as the purchaser for the sum of 'b' $150 per acre upon the following conditions:

"This option may be exercised by the purchaser only by accepting the same in writing within the time above stated and at the time of such acceptance paying the sum of $500 on account of the purchase

price, in cash or by certified check and the under-signed agrees not to sell, mortgage or do any act to diminish or incumber the title to said land while this option remains in force.

"Failure of the purchaser to exercise this option and consummate a sale within the time and in the manner herein provided shall extinguish the purchaser's right to said land and all payments made.

"If this option is accepted within the time above limited, or as soon thereafter as the same can be secured, the undersigned shall, at the option of the undersigned, deliver to purchaser a complete abstract and tax history of, or policy of title insurance of said premises issued by the Union Title & Guaranty Company of Detroit, certified to a date simultaneous with or later than the date of such acceptance.

"The sale shall be consummated within 10 days after the delivery of such abstract or policy of title insurance.

"If an abstract is delivered and upon examination the title is objected to and notwithstanding a policy of title insurance is secured from the Union Title & Guaranty Company, of Detroit, and delivered, insuring the title in a condition to satisfy this option to the sale shall be consummated within three days after delivery or tender of such policy.

"Such consummation shall be effected by, 'c'

"A land contract with 24 per cent. of purchase price as down payment and $500 on principal and 6 per cent. interest payable semi-annually all to be paid in seven years from date of contract.

"Sellers are to have a registered surveyor survey said property and deliver to buyer a blueprint of same.

"Land sold subject to an oil lease now on same. If this option is exercised $50 paid for this option is to be applied on down payment.

"It is understood that the above-named purchaser is a broker and if a sale of the premises is consum-

mated under this option, the undersigned agrees to pay a commission of 5 per cent. upon the selling price of said land to Earl Braid.

"Signed, sealed and delivered this 7th day of January, 1929.

"FRANK BISHOP,<br>
"MRS. GENEVIEVE BISHOP.

"In presence of:

"HARRY McCORMICK,

"EARL BRAID."

It will be noted that the purchaser is described as a broker, and that a commission of 5 per cent. of the selling price was to be paid to Braid.

On the 25th day of February, 1929, Braid delivered to Bishop a check for $500, payable to Bishop and wife, and in turn Bishop executed a receipt and agreement to convey title, as follows:

"Feb. 25, 1929.

"This certifies that the undersigned have received the sum of $500 being deposit on option dated January 7, 1929, for premises described as west one-half of northwest one-quarter section 17, containing 80 acres more or less. The northeast one-quarter of northwest one-quarter section 17, containing 40 acres more or less, also the northwest one-quarter of northeast one-quarter section 17, containing 40 acres more or less all in Bruce township, Macomb county, and agree to convey merchantable title in accordance with terms and conditions as set forth in said option.

"FRANK BISHOP,

"Dated Feb. 25, 1929.     "GENEVIEVE BISHOP."

Bishop's wife was in Florida. He assumed he had authority to sign her name to the receipt and agreement of February 25, 1929, and also to indorse her name on the check for $500. On March 1, 1929, the date set in the option for closing, Bishop wrote to Braid requesting that he mail the land contract so that he could forward it to his wife in Florida

for her signature. He also stated in the letter that the county surveyor was to complete the computation of the acreage within a week. He did not deliver the abstracts to the property until after the middle of March.

Very shortly thereafter, contracts of purchase were sent to Bishop for the signatures of himself and wife. In naming the vendee, the contracts disclosed for the first time the name of the wealthy client for whom Bingham was purchasing the property. Bishop thereupon demanded immediate cash payment for the property instead of the deferred payments provided for in the option. A warranty deed was sent to him for execution, accompanied by a letter expressing the purchaser's willingness to close the deal on a cash basis. Defendant finally refused to proceed with the deal, and plaintiff brought the instant suit for the collection of his commission.

The case was heard by the trial judge without a jury. In his opinion, the court stated that there is some showing that defendant later sold the property to the wealthy client whom Bingham represented, on the identical terms plaintiff had arranged. Otherwise the record is silent in regard to this subsequent sale. Counsel for Bishop admit that the property was sold to Bingham's client, but there seemed to be a dispute as to whether the terms of the sale were the same as provided in the option. The trial court properly rendered judgment in favor of plaintiff for the full amount of the commission.

Defendant claims that he is absolved from liability for the commission under the holding in *Greenough* v. *Willcox,* 238 Mich. 52. That was not a suit for the collection of commission, but for the specific performance of an option agreement to convey. In that case, moreover, the optionee and the

broker were the same person. It was held that the agreement was that of sales agency and that defendant, as principal, was not obliged to sell to plaintiff, his agent, who was trying on a resale to make a profit at the expense of his principal. The agreement in the present case provides for payment of a real estate commission to plaintiff and not the optionee.

It is further claimed that, inasmuch as the deal was not closed on the 1st day of March, 1929, Bishop no longer could be held. The receipt for $500 was unconditional and contained an absolute agreement on the part of Bishop and wife to convey the property in accordance with the terms of the option. The letter of March 1, 1929, is further acknowledgment that the parties considered the property sold. It was Bishop who asked for additional time within which to have the survey made and requested that the contracts be forwarded so that they might be sent to Mrs. Bishop. The receipt and the letter, taken together, show beyond any question that Bishop considered the payment of $500 as an acceptance of the option, and the delay in closing was caused by him and not by Bingham or Braid. The abstracts were not furnished by Bishop until the middle of March. Other questions not raised in the lower court or in the assignment of errors will not be considered. Plaintiff procured a buyer ready, willing and able to purchase on the terms named by defendant, and is entitled to the commission under the agency agreement.

Judgment of the lower court is affirmed, with costs to plaintiff.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, and WIEST, JJ., concurred. FEAD, J., did not sit.