OLIVER ERICSON, APPELLANT, V. NEBRASKA-IOWA FARM INVESTMENT COMPANY ET AL., APPELLEES.

278 N. W. 841

FILED APRIL 1, 1938.    No. 30154.

*Ginsburg & Ginsburg,* for appellant.

*Votava, McGroarty & Sklenicka, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and MUNDAY, District Judge.

EBERLY, J.

This is a suit in equity for the rescission of a contract in writing, dated January 24, 1935, between Oliver Ericson of Oakland, Nebraska, and the Nebraska-Iowa Farm Investment Company; for an accounting for certain specific property owned by plaintiff and delivered to and received

by defendants named, pursuant to the terms of the above contract, in trust and as agents of plaintiff; and also to recover certain secret and concealed profits made by defendants in handling plaintiff's property as his agents and trustees.

Without attempting to detail the niceties of the defendants' technical pleadings by which each material allegation of plaintiff's petition was controverted, it may be said that defendants assume the position that by the transactions in suit the property here in litigation was sold by plaintiff to defendants in consideration of the agreed delivery to him (by defendants) of 245 shares of the capital stock of the Western Union Life Insurance Company of Lincoln, Nebraska. While the execution of the contract in writing of January 24, 1935, by the Nebraska-Iowa Farm Investment Company and the receipt of plaintiff's property therein described are admitted, defendants expressly deny that by virtue thereof any fiduciary relation was thereby constituted between plaintiff and any of the defendants, and further by their pleading insist that, if said contract appears to provide for a fiduciary relationship, the same is a mutual mistake of fact, and "should be so construed, corrected and reformed as intended by the parties as a final, conclusive and binding contract of sale between these parties."

Plaintiff joined issue with defendants' pleading by a reply denying generally the allegations thereof.

A trial in the district court resulted in a judgment and decree for defendants. From the order of the trial court overruling his motion for a new trial, plaintiff appeals.

This case comes to this tribunal as an "appeal in equity," and involves a trial *de novo* in this court. Upon this record, we are, by statute, required to "reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence, without reference to the conclusion reached in the district court *or the fact that there may be some evidence in support thereof.*" (Italics supplied.) Comp. St. 1929, sec. 20-1925.

The transaction forming the basis of this litigation, at least at its inception, was an attempt to secure an exchange of certain real estate mortgages for common stock of the Western Union Life Insurance Company of Lincoln, Nebraska. It clearly was not a sale. The parties to this deal were Oliver Ericson, a tenant farmer living at Oakland, Nebraska, who owned the mortgages, and the Nebraska-Iowa Farm Investment Company, a corporation, of which Vivian L. Maynes, wife of J. V. Maynes, was president and J. V. Maynes was manager, and as to which the latter testified: "Q. You testified that the Nebraska-Iowa Farm Investment Company is a Nebraska corporation? A. Yes, sir. Q. And you are the general manager? A. Yes, sir. Q. And what is this, a real estate concern? A. Yes, sir. Q. Consisting of yourself and your wife? A. I think there are two outside, or three outside stockholders. Q. Mostly nominal stockholders? A. Yes; there is one $1,500 stockholder outside. Q. Is it a trade-name for the real estate business? A. Possibly."

The Western Union Life Insurance Company, of Lincoln, Nebraska, some five years prior to this transaction, had been organized with the par value of its common stock at $10 a share, but by resolution of its board of directors the sale value was then fixed at $22.50; but it never succeeded in selling any of this stock at the selling price so fixed. About "the 12th, 13th or 14th of February," 1935, the board of directors reduced the selling price to $11.50 a share. No dividends had ever been paid by this insurance company, and none of its stock had ever been sold for as high as $30 a share; and its book value, as computed by its own officers, was $11.58 a share. It had no established market value.

This insurance company had had an agreement with the Nebraska-Iowa Farm Investment Company as early as 1934, whereby the investment company should have a commission on all of the common stock of the insurance company sold by it. As to this agreement, the testimony in the record is that the insurance company had no objection

to Maynes buying stock for himself outright and paying for it, and the insurance company would, in that event, sell it on the same terms and allow him the same commission. J. V. Maynes testifies, in part, viz.: "I had always been told by Mr. Herbert (secretary of the insurance company) that if any deal came up that we could work out on some stock, not to pay too much attention to the quoted price; to get a proposition and come down to see him."

The plaintiff Ericson, prior to the transaction in suit, was the owner and in possession of the following real estate mortgages, viz.: The Vogt mortgage of $1,000; the Kreider mortgage of $1,000; the Benedict mortgage of $2,300; and a 5/8 interest in a decree of foreclosure, then pending on moratory stay, of a mortgage executed by G. G. Griffin on an 80-acre tract situated some two miles from Pender, Nebraska. For these mortgages and the obligations secured thereby, he had paid par. But there had been defaults in certain interest payments accrued thereon, and certain taxes thereon and on the premises mortgaged had not been paid.

It appears without question that on or about January 24, 1935, the plaintiff was brought to the office of the Nebraska-Iowa Farm Investment Company by one Frank Hoagland, and introduced to J. V. Maynes, the manager thereof. Hoagland is an associate with Maynes in the deal now under consideration, and was by the latter paid $150 for his services therein. Epitomizing the discussion that followed, J. V. Maynes was represented to plaintiff as the man engaged in selling the stock of the Western Union Life Insurance Company. Ericson's testimony is that Maynes stated to him that this stock was then worth $30 a share, and that dividends thereon were being paid; that Maynes told him that his real estate mortgage interests could be revamped and reformed and traded to the insurance company at a valuation of $7,350, which would secure him 245 shares of stock; that Maynes would revamp these securities without charge to Ericson as he would get his compensation by the sale of the stock. Ericson

further testifies: "He (Maynes) told me that if the company refused to make the deal—if they would not allow me as much as 245 shares of stock for my securities—I would get my securities back and there would be no deal; and he also stated that, if the company would allow more than that, he had estimated that that would be mine and I would get all that there was for my securities, and all the company would allow me for my securities; that I would get it all."

At the conclusion of this discussion, J. V. Maynes dictated a contract to his stenographer. Though this occurred when Ericson was present, he did not participate. The contract thus prepared purports to be between the plaintiff, as party of the first part, and the Nebraska-Iowa Farm Investment Company, as party of the second part. It was not signed when the typing was completed, but some hours later the signatures were affixed thereto at the home of J. V. Maynes. Summarizing the provisions of this instrument, omitting strictly formal parts, it recites the ownership by first party of certain securities which first party desires to exchange for capital stock of the Western Union Life Insurance Company, but which were not then in proper form for legal investment of the insurance company.

This contract further recites: "Whereas, it is the purpose of this agreement that first party shall offer said securities to second party for said capital stock in order that second party may have an opportunity to try and rearrange the legal status of said securities into legal investments for life insurance companies, after which second party will offer said securities to Western Union Life Insurance Company for capital stock which will be delivered to said first party. * * *

"Therefore, it is hereby agreed that first party shall and does hereby offer the following securities for 245 shares of capital stock in the Western Union Life Insurance Company:" (then follows a complete description of the securities embraced in the contract).

In addition, the following provisions were embraced in this contract:

"As evidence of good faith in the above proposition, first party hereby deposits $200 cash with second party to be held in escrow by them pending the final approval and acceptance by the Western Union Life Insurance Company of the above described securities and upon the acceptance by said company and delivery of said securities, said first party hereby agrees to pay said $200 to second party and if the offer is not accepted by said Western Union Life Insurance Company, second party agrees to refund said $200 to first party.

"Said second party hereby agrees that upon the execution of this contract they will immediately take steps to contact the owners of the property that is security for the above described securities and endeavor to reform and re-vamp said securities into legal investments for life insurance companies and that as soon as said securities can be reformed into legal investments that they will tender said offer to the Western Union Life Insurance Company, for 245 shares of capital stock which have a par value of $10 per share.

"First party further agrees to furnish abstracts brought down to date showing the above described securities to be a good and valid first lien on said property except unpaid taxes which may show on the records and convey said securities by good and sufficient assignments.

"Should said Western Union Life Insurance Company refuse to accept the above offer, said $200 will be refunded to first party and this contract shall be null and void and of no effect whatsoever. If said Western Union Life Insurance Company accept said offer, the parties hereto hereby agree to faithfully perform all the terms and conditions contained herein to be performed by them."

In substance, defendants contend that the terms of the foregoing contract constitute it a contract of sale or exchange, and confers upon them the rights of a vendee or assignee, wholly relieved of any fiduciary obligations; and

that such contract does not create or establish the relation of principal and agent between the plaintiff and the defendant investment company.

This court is not in accord with these contentions. "Where there is a question as to the meaning of a contract, it is to be construed most strongly against the party preparing it." *Greenough v. Willcox*, 213 N. W. 175 (238 Mich. 52).

The following is a form of this rule which this court has approved, viz.: "Language used in a contract prepared by one of the parties thereto, which is susceptible to more than one construction, should receive such a construction as the party preparing the same at the time supposed the other party would give to it, or such a construction as the other party would be fairly justified in giving to it." *Flory v. Supreme Tribe of Ben Hur*, 98 Neb. 160, 152 N. W. 295.

An approved statement of the basic reason on which the rule rests is: "Where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises, the reason for the rule being that a man is responsible for ambiguities in his own expressions and has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage." 13 C. J. 545.

See, also, *People's State Bank v. Smith*, 120 Neb. 29, 231 N. W. 141; *Kortright v. Mutual Life Ins. Co.*, 123 Neb. 746, 243 N. W. 904; *Lyman-Richey Sand & Gravel Co. v. State*, 123 Neb. 674, 243 N. W. 891.

The written contract here presented, read in the light of the foregoing principles, and in view of the surrounding circumstances established by the proof, clearly discloses that the contractual intent was to obtain an exchange of Ericson's securities for the insurance company stock. This exchange was to be by and between Ericson and the insurance company, and in the event terms satisfactory to the insurance company were not agreed upon nothing would

result and Ericson would retain his securities. Each act and duty which the terms of the written contract in suit enjoined upon the second party thereto was intended to, and did, serve no purpose other than to facilitate and secure the making by plaintiff of the primary contract of exchange with the Western Union Life Insurance Company.

"In determining whether a contract is one of sale or of agency, the essential test is its real purpose and object. * * * Although particular contracts may be difficult to classify, the distinction in principle is clear and if the other party is merely empowered to bind the owner of the property by making on his behalf a contract to sell the same to another, and no interest in the property is given to him, the contract is merely one of agency." 66 C. J. 480.

It follows that the contract in the instant case created and established between the parties thereto the relation of principal and agent. *Gesselman v. Phillips*, 110 Neb. 416, 193 N. W. 750; *Pearlman v. Snitzer*, 112 Neb. 135, 198 N. W. 879; *Nebraska Power Co. v. Koenig*, 93 Neb. 68, 139 N. W. 839; *Greenough v. Willcox*, 238 Mich. 52, 213 N. W. 175.

On this basis the facts disclosed in the instant case invoke the application of these well established principles, viz.:

An agent or other fiduciary who deals with subject-matter of the agency so as to make a profit for himself will be held to account in equity as trustee for all profits and advantages acquired by him in such dealings. 2 C. J. 694, 697, 700, 888; 2 Am. Jur. 202-229; *Gesselman v. Phillips*, 110 Neb. 416, 193 N. W. 750; *Pearlman v. Snitzer*, 112 Neb. 135, 198 N. W. 879; *Rockford Watch Co. v. Manifold*, 36 Neb. 801, 55 N. W. 236; *Jansen v. Williams*, 36 Neb. 869, 55 N. W. 279.

An agent who fails to disclose to his principal every material fact in the transaction which is the subject-matter of the agency is guilty of fraud and bad faith, and may not retain anything acquired by him either in the performance or violation of his agency. *Pearlman v. Snitzer, supra; Barber v. Martin*, 67 Neb. 445, 93 N. W. 722; *State v. State Journal Co.*, 77 Neb. 752, 110 N. W. 763; *Missouri*

*Valley Trust Co. v. Nelson,* 104 Neb. 499, 177 N. W. 835; *Maul v. Cole,* 94 Neb. 714, 144 N. W. 247; *Stettnische v. Lamb,* 18 Neb. 619, 26 N. W. 374.

All persons who knowingly aid or participate in committing a breach of trust will be held responsible for the resulting loss, and will be held accountable by personal judgment for the value of the property so converted. *Masonic Bldg. Corporation v. Carlsen,* 128 Neb. 108, 258 N. W. 44; *Federal Trust Co. v. Baxter,* 128 Neb. 1, 257 N. W. 368; *Ashby v. Peters,* 128 Neb. 338, 258 N. W. 639.

The evidence in the record clearly discloses that in reliance upon the terms of the contract of agency in suit, and upon the false representations of fact made by defendants, the plaintiff duly assigned to the Nebraska-Iowa Farm Investment Company all of his real estate mortgage securities hereinbefore enumerated and they were by defendants duly accepted and received. The Vogt and Kreider mortgages were revamped and renewed by the investment company. The Kreider mortgage, which when revamped and reformed amounted to $1,100, together with $659.50 in cash, and together with a credit of 10 per cent. allowed J. V. Maynes amounting to $195.50, was delivered to and accepted by the Western Union Life Insurance Company at par, and certificate of stock No. 382 A, bearing date of March 11, 1935, for 170 shares of common stock, each of the par value of $10 was issued therefor. This certificate defendants caused to be transmitted to plaintiff. The Vogt mortgage was revamped and renewed in the sum of $1,700, and is acceptable to the insurance company, but, together with the Benedict mortgage, still remains in possession of defendants and under their control. The 5/8 interest in the $8,000 Griffin mortgage was by the investment company sold for cash, of which amount, after allowing all just credits, there still remains in the possession of the investment company the sum of $2,608.26, which is equitably the property of plaintiff and as such constitutes a trust fund.

The signature of plaintiff to the contract in suit was

secured upon the express and false representation that the actual value of the common stock was $30 a share, and the contract was entered into by the parties thereto on that basis. The defendant investment company wholly failed to disclose to plaintiff the true facts with reference thereto, and also, in violation of duty, failed to disclose that the actual selling price of the 170 shares of stock, when purchased, was $11.50 a share and no more. *The Distilled Spirits*, 11 Wall. (U. S.) 356; *Norris v. Tayloe*, 49 Ill. 17; *Fairfield Savings Bank v. Chase*, 72 Me. 226.

The defendants are now unlawfully claiming the right to purchase for, and supply to, plaintiff 75 shares of common stock at a cost to them of $11.50 a share, less 10 per cent., in full satisfaction of the terms of the contract in suit, and to retain two mortgages, hereinbefore described, and the balance of the proceeds of the sale of the Griffin decree as additional compensation. This claim transgresses the principles announced by this court in *Morrison v. Hunter,* 74 Neb. 559, 105 N. W. 88.

This court, therefore, finds that these claims of defendants are unlawfully made and not sustained by the evidence; that immediately upon the discovery of the actual situation and the frauds of the defendant investment company and J. V. Maynes, its manager, the plaintiff on May 9, 1935, elected to rescind the contract of agency and the transaction evidenced thereby, and tendered to defendants the certificate of stock, No. 382 A, and demanded the return of the securities then held and controlled by defendants, and also the amount of trust funds then in their possession. This court further finds that the plaintiff is entitled to rescind said contract of agency, to have a return of all of his property in the possession of defendants on the date of rescission, which includes the Vogt mortgage, the Benedict mortgage, and the sum of $2,608.26 with interest thereon, as provided by law, from May 9, 1935.

Therefore, the findings, general and special, as made and entered by the district court for Douglas county in this cause, are each set aside and annulled, and its decree and

judgment entered in favor of defendants is wholly reversed, and the cause is remanded, with directions to enter judgment in favor of the plaintiff and against the Nebraska-Iowa Farm Investment Company and J. V. Maynes for the return to plaintiff of the two real estate mortgages referred to herein, and, in addition, a judgment for the sum of $2,608.26 with interest, all to be in harmony with this opinion.

REVERSED.