WILL FEIGHT, APPELLANT AND CROSS-APPELLEE, V. STATE REAL ESTATE COMMISSION OF THE STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLANT.

39 N. W. 2d 823

Filed December 6, 1949. No. 32604.

*Free, Berry & Free, Fraser, Connolly, Crofoot & Wenstrand,* and *W. H. Wright,* for appellant and cross-appellee.

*James H. Anderson,* Attorney General, and *Walter E. Nolte,* for appellee and cross-appellant.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an appeal from a judgment of the district court for Dixon County affirming a suspension of appellant's license as a real estate broker in Nebraska.

The complaint was filed by one Richard Mathers before the State Real Estate Commission pursuant to section 81-881, R. S. 1943. After hearing, and on December 26, 1947, the commission entered an order finding that the appellant Feight had violated certain specified provisions of the act and suspended his license from the date of filing the order until January 1, 1949. In an original suit filed in the district court the action of the commission was sustained. Appellant seeks a review of the judgment entered by the district court on December 3, 1948. An appeal was perfected and a supersedeas bond filed.

The evidence shows that appellant was engaged in the real estate brokerage business at Sioux City, Iowa. During the four years preceding the transactions here complained of he carried on considerable business in Nebraska under a nonresident broker's license. On March 8, 1947, appellant contacted Richard Mathers with the view of selling the farm involved to him. He drove Mathers and his wife to the farm where a limited inspection was

made, it being too muddy to get over the whole of the land. It is asserted that appellant made certain misrepresentations at that time concerning the condition of the well, the availability of electricity, and the existence of approximately ten acres of alfalfa on the farm. Without discussing the evidence on these alleged misrepresentations, we hold that the findings of the trial court were correct in determining that such misrepresentations were not established and consequently provided no basis for discipline under the provisions of section 81-881.

After the inspection of the farm Mathers offered to purchase it for the sum of $77.50 an acre. Mathers paid $2,000 to appellant to be retained as a down payment if the offer was acceptable to the owner. The total purchase price was to be $10,400 and a first mortgage loan of not less than $6,500 was to be obtained on the property. A first mortgage loan of $6,700 was obtained and two notes of $850 each were made payable and delivered to Frank H. Linville as owner.

The record discloses that the farm in question had been formerly owned by one Lenora Schopke. Appellant Feight, in seeking a buyer of the farm for Miss Schopke, had sought out D. Van Donselaar, an attorney in Sioux City, as a possible purchaser. Van Donselaar dealt extensively in real estate and Feight had acted as his broker in five or six previous transactions. As a result of Feight's efforts, Van Donselaar contracted to purchase the land at $55 an acre, or a total amount of $7,370. To facilitate a resale of the property the title was taken in the name of Linville, a friend of Van Donselaar.

An agreement was made between Van Donselaar and Feight that Feight should resell the property. Under this agreement Feight was to receive one-half the net profit resulting from the resale and was to waive his commission of $385 on the sale from Schopke to Van Donselaar.

During the time that arrangements were being made for the $6,700 mortgage in order that the transaction

could be consummated, Van Donselaar and Feight became involved in a dispute regarding commissions and other amounts which Feight claimed Van Donselaar owed him. Feight contends Van Donselaar advised him that he would pay him nothing on the Mathers sale and demanded the $2,000 down payment in full. He asserts also that Van Donselaar demanded an abstract of title to the property which Feight had procured at an expense of $74.10. The first mortgage was recorded on April 5, 1947, but the amount it was given to secure was not paid over on the instructions of Feight, who was insisting upon a settlement with Van Donselaar before going ahead with the deal. Mathers was delaying final settlement because of the claimed misrepresentation of the well. The dispute concerning the well was settled on April 17, 1947, by the payment of $400 to Mathers by Feight. The dispute over the commissions owed to Feight by Van Donselaar remained unsettled, and Feight says that Mathers agreed to await their adjustment before completing his purchase of the farm; Mathers in the meantime was to occupy the farm. Mathers denies that any such understanding was had.

A few days after April 17, 1947, Van Donselaar obtained a deed to the farm direct from Lenora Schopke with Linville as the grantee. On April 28, 1947, Van Donselaar obtained an order from Mathers directing the mortgagee to pay the $6,700 to himself or Linville. The company making the loan refused to honor this order at the instance of Feight. Van Donselaar also procured an order from Mathers directing Feight to pay over the $2,000 down payment to himself or Linville. On April 29, 1947, Van Donselaar served notice on Feight that any previous agreement made between the two regarding a commission or a sharing of the profits on the sale of the land to Mathers was canceled. The difficulties between Van Donselaar and Feight remained unadjusted, Mathers remained on the farm, and the situation otherwise remained unchanged until September 23, 1947, when the

complaint in the case was filed with the State Real Estate Commission.

On November 7, 1947, Van Donselaar and Feight settled all their differences. By the settlement Van Donselaar conveyed the title to the farm to Feight and assigned to him the Mathers purchase agreement. Feight attempted to immediately close the sale of the land to Mathers. Mathers procrastinated in the closing of the deal and Feight, in the latter part of November 1947, commenced a suit to foreclose the contract. Mathers, with Van Donselaar appearing as his attorney, filed an answer alleging that Mathers and Van Donselaar had mutually agreed to rescind the contract in June 1947. Mathers counterclaimed for the $2,000 down payment. Feight claims to have had no knowledge of any such rescission until the answer was filed. Mathers remained on the land until February 1948, when he voluntarily relinquished the possession.

The applicable portions of section 81-881 are as follows: "The commission may, upon its own motion, and shall, upon the sworn complaint in writing of any person, investigate the actions of any real estate broker or any real estate salesman and shall have the power to revoke or suspend any license, issued under this act, whenever the broker or salesman has been found guilty of any of the following unfair trade practices:   * * * (2) failing to account for and remit any moneys coming into his possession belonging to others; * * * (4) acting in a dual capacity of broker and undisclosed principal in any transaction; * * * (14) the broker or salesman has demonstrated his unworthiness or incompetency to act as a broker or salesman, whether of the same or of a different character as hereinbefore specified; * * *."

Section 81-882, R. S. 1943, provides for notice and hearing. Section 81-884, R. S. Supp., 1947, provides that the commission shall state in writing its findings and determination and its order in the matter. With reference to appeal, this section states: "Should the applicant for

a license or a license holder desire to appeal from the decision of the commission, he shall, within ten days, file an appeal bond with the commission in the sum of fifty dollars and file an original action in the district court of the county in which the cause of action arose and, pending final determination of such action, the holder of a license shall be permitted to do business as a real estate broker or real estate salesman the same as though a license were in full force and effect." No other procedural requirements are set forth in the act.

It was clearly the intent of the Legislature to provide an appeal to the district court from orders entered by the State Real Estate Commission pursuant to section 81-884. The requirement in the statute that an appeal bond is required, which has the effect of staying the commission's order until the final disposition of the case, appears conclusive of the legislative intent. We are here concerned with the type of hearing to be held in the district court where the appellate proceedings are required to be commenced and carried on as an original action. The proceeding in the district court, under such a statute, is in the nature of an original action, equitable in nature, commenced by an aggrieved party who sets forth his complaint or complaints against the officer, board, or commission making the order which he claims is not in accordance with law. The complaints may be that the charge was insufficient; that he was not given proper notice of the hearing; that opportunity to be heard was not afforded; that the evidence did not warrant the ruling made; or any other objection to the procedure which if sustained would affect the validity of the order. The State Real Estate Commission is then entitled to answer and deny the allegations, or affirmatively set forth its justification of the order complained of. The court is required to determine only the issues thus raised. It appears therefore that it was the intent of the Legislature to provide more than a review to determine whether the order complained of was arbitrary or capricious. The

act confers upon the district court the power to inquire into the subject matter of the complaints set out in the pleadings filed in the district court including, if alleged, that the findings of the commission are contrary to the weight of the evidence. See Withers v. Golding, 100 Utah 179, 111 P. 2d 550.

We think the general rule is that where a review of a finding and order of an administrative officer, board, or commission is afforded by the filing of an original action in the district court, the issues to be determined are those raised by the pleadings and not those raised before the officer, board, or commission. Such a suit will be tried as any other civil action when the statute does not prescribe the procedure to be followed or limit the scope of the determination to be made.

We are of the opinion that the district court was correct in going ahead with the trial of the case on the issues presented in the same way as in any other civil action. Both parties were afforded full opportunity to produce evidence touching upon the issues raised by the allegations of appellant's petition and the answer of the commission. From this the trial court determined that appellant had violated section 81-881 as alleged, and sustained the order of the commission. On appeal to this court we are asked to review the correctness of this finding.

The evidence heretofore cited establishes that appellant withheld $2,000 from the seller which was paid to him by the purchaser of the real estate as a down payment thereon. The evidence will sustain a finding that appellant had waived a commission in the sense that the term is ordinarily used and agreed to accept one-half of the net profit resulting from the sale as his compensation. His attempt to hold the money to enforce his personal demands and claims against Van Donselaar for commissions on this and other sales of real estate, and thereby failing to account for moneys coming into his possession in his capacity as a real estate broker,

was a violation of the trade practice designated as subdivision (2) in section 81-881. While the reasons motivating the adoption of this statutory provision are not material in the present case, it is evident the Legislature believed that the retention of moneys not belonging to him by a real estate broker, and the consequent holding up and delaying of the closing of real estate sales, were so contrary to the public interest as to warrant its prohibition. Without again detailing the evidence in support of the finding that appellant violated the trade practice designated as subdivision (2) in section 81-881, we conclude after an examination of the record before us that it supports a finding that the appellant violated section 81-881. This being true, we do not deem it necessary to discuss the evidence, largely conflicting, bearing upon the other issues raised by the pleadings.

It is contended that the case pending before this court has become moot. We think not. The license granted to appellant was a continuing one so long as he paid the annual license fee prescribed by the statute. § 81-877, R. S. Supp., 1947. While it is true that the specified time of appellant's suspension has terminated during the pendency of the appeal, this does not of itself make the case moot. In Adams v. Union R. R. Co., 21 R. I. 134, 42 A. 515, 44 L. R. A. 273, the court said: "A moot case is one which seeks to determine an abstract question, which does not rest upon existing facts or rights. Where a concrete case of fact or right is shown, we know of no principle or policy of law which will deprive a party of a determination simply because his motive in the assertion of such right is to secure such determination. It is a matter of common practice." We quoted the above with approval in State v. First Catholic Church of Lincoln, 88 Neb. 2, 128 N. W. 657. In Kenworthy & Taylor, Inc. v. State Examiners of Electricians, 320 Mass. 451, 70 N. E. 2d 247, the court said: "We are of the opinion that the principle of the foregoing cases has no application to a person in the predica-

ment of the petitioner. It cannot rightly be said that the petitioner, which is still in business, has no live or existing rights simply because the ten days of the suspension have expired. Obviously the suspension of the license, following the 'conviction' of its president and treasurer, if not reversed, must stand as a permanent record against the petitioner. * * * Administrative boards seem to be regarded as a necessity in modern government, and if their decisions on the suspension of licenses, involving, as they do, the right of the individual to engage in business or profession, can by the shortness of the suspension be removed from the field of judicial review, such boards could create an intolerable tyranny." It might be that a suit to suspend or cancel a license would become moot where the license expired or was otherwise terminated before the completion of the trial. Under such circumstances nothing remains to be determined other than a mere abstraction. In a case, however, where an adverse finding has been had which reflects upon the character and standing of the person charged, the termination of the license does not have the effect of removing the stigma or disgrace resulting from the finding. One claiming his innocence under such circumstances has a justiciable issue which may be of extreme importance to him.

See, Rattray v. Scudder, 67 Cal. App. 2d 123, 153 P. 2d 433; People v. Harnett, 221 App. Div. 487, 224 N. Y. S. 97; Commonwealth v. Fleckner, 167 Mass. 13, 44 N. E. 1053.

While there are cases in this and other states tending to sustain the position of the commission, the better rule is announced in the cases cited. We do not believe the Legislature intended to take away the right to undo the disgrace or professional discredit of a suspension of a license merely because the suspension was served, because it was too short to permit an appeal, or because it terminated before the benefit of an appeal could be had.

The commission has filed a cross-appeal asserting therein that the trial court erred in not assessing a new and further period of suspension due to the fact that the period of the suspension assessed by the State Real Estate Commission had only 27 days to run at the time the judgment of the district court was entered. This question is not before us. In the district court the State Real Estate Commission specifically prayed in its answer "that the court find and determine that the order heretofore entered by the State Real Estate Commission of Nebraska suspending the real estate brokers license of Will Feight be sustained * * *." The commission received all the relief for which it asked. The issue presented by the cross-appeal was never raised in the district court. The error now claimed, if it was error, was committed at the express request of the commission. Under such circumstances the commission is in no position to raise the question for the first time on appeal.

We have examined the remaining assignments of error and find them to be without merit. The judgment of the district court is affirmed.

AFFIRMED.