D. J. RHOADES ET AL., APPELLEES, V. STATE REAL ESTATE COMMISSION OF THE STATE OF NEBRASKA, APPELLANT.

42 N. W. 2d 610

Filed May 12, 1950.   No. 32731.

702

*Clarence S. Beck*, Attorney General, and *Robert A. Nelson*, for appellant.

*Fraser, Connolly, Crofoot & Wenstrand*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an appeal from a decree of the district court for Douglas County reversing an order of the State Real Estate Commission which order suspended the real estate brokers' licenses held by D. Jay Rhoades, referred to as D. J. Rhoades, and the American Mortgage Corporation, appellees herein, for a period of six months, and directed the commission to reinstate the appellees in good standing from the date such order was rendered.

It appears from the record that on February 21, 1947, G. E. Mundt, known as George E. Mundt, and Alma M. Mundt, his wife, filed a complaint with the State Real Estate Commission against D. J. Rhoades, a real estate broker. This proceeding was therefore commenced prior to the effective date of Laws 1947, Chapter 316. The complaint is long and involved. The substance of it is as follows: G. E. Mundt, the owner of a farm, listed it for sale with the American Mortgage Corporation which was represented in this transaction by D. J. Rhoades. When the farm was listed for sale the listing agreement specifically designated that the owner would give possession

of the farm March 1, 1948. D. J. Rhoades, in negotiating the sale of the farm, falsely and fraudulently represented to the complainants that the purchasers were acquainted with the complainants' tenants and had made proper arrangements with the tenants to surrender possession of the farm on March 1, 1947. Complainants relied on the false and fraudulent representations so made by D. J. Rhoades and believed the same to be true when in fact such representations were false. By virtue of such false representations, the complainants were required to employ counsel to assist them in the matter.

Section 81-881, R. S. 1943, provides that upon the sworn complaint in writing being filed with the State Real Estate Commission, the commission is authorized to investigate the actions of any real estate broker or any real estate salesman, and has the power to revoke or suspend any license, issued under this act, when the broker or salesman has been found guilty of unfair trade practices. The section then enumerates what constitutes unfair trade practices. Without detailing this section of the statutes in such respect, an examination of the section warrants the conclusion that the complaint filed against D. J. Rhoades before the State Real Estate Commission was sufficient to charge him with unfair trade practices.

The real estate broker D. J. Rhoades was given notice as a holder of a real estate license by the State Real Estate Commission in conformity with section 81-882, R. S. 1943, and hearing was had before the commission as provided for in the above-cited section of the statutes. On March 27, 1947, after hearing was had, the State Real Estate Commission rendered an order suspending the real estate brokers' licenses of D. J. Rhoades and the American Mortgage Corporation as of that date, for a period of six months. D. J. Rhoades and the American Mortgage Corporation, in compliance with section 81-884, R. S. 1943, filed an appeal bond in the amount of fifty dollars with the commission, and filed an original action in the district court as provided in said section.

The petition filed in the district court for Douglas County by the American Mortgage Corporation and D. J. Rhoades alleges the following: That the complaint upon which the order of the commission is based does not charge D. J. Rhoades with any violations of the provisions of section 81-881, R. S. 1943, as required by sections 81-862 to 81-887, R. S. 1943, and does not contain any finding or determination that the plaintiffs, or either of them, have been guilty of any violation of the provisions of section 81-884, R. S. 1943, and such order of the commission is null and void. The petition also alleges that no notice was served upon the American Mortgage Corporation as required by section 81-882, R. S. 1943, and no evidence was offered against such corporation, and it was not charged with the violation of the Real Estate Commission Act or any sections thereof. The petition further alleges that the acts of the commission in all respects, with reference to revoking the real estate licenses of D. J. Rhoades and the American Mortgage Corporation, were arbitrary, unreasonable, and capricious, and prays for an order canceling the order suspending the real estate licenses on the record of the commission and ordering the commission to reinstate the appellees in good standing as real estate brokers within this state, for such other relief as may be just and equitable, and for costs expended.

The answer of the State Real Estate Commission constitutes a general denial of the plaintiffs' petition that the proceedings had before the commission were illegal, unreasonable, or arbitrary, and prayed the court to determine that the order rendered by the commission be sustained.

By stipulation of the parties the transcript of the proceedings before the State Real Estate Commission, the exhibits introduced in the hearing before the commission, and the evidence taken before the commission, together with the order rendered by the commission, were received in evidence in the instant case. No further

evidence was taken before the district court.

Hearing was had in the district court for Douglas County. The district court entered a decree July 6, 1949, setting aside and vacating the order of the commission, and directing the commission to cancel or remove the order of suspension from its records, and to reinstate the plaintiffs as real estate brokers in good standing within the State of Nebraska as of and from March 27, 1947. The commission filed a motion for new trial. Upon the overruling of the motion for new trial, the commission appeals.

There was no notice served on the American Mortgage Corporation or D. J. Rhoades as its president, or any proper officer of the corporation legally required to accept notice, as contemplated by section 81-882, R. S. 1943. The complaint filed against D. J. Rhoades individually did not so indicate. At the hearing before the real estate commission no defense was presented by the American Mortgage Corporation. It is clear from the afore-cited section of the statutes that notice shall be given the holder of a real estate broker's license. The statute in this respect is mandatory. No notice having been served upon the American Mortgage Corporation as required by law, it was not a party to the litigation before the State Real Estate Commission nor the district court, and the State Real Estate Commission was in error in suspending its real estate broker's license. Under the circumstances, we deem no citation of authority necessary insofar as this phase of the case is concerned.

For convenience in summarizing the evidence we will refer to George Emil Mundt as Mundt; to his wife as Alma Mundt; to D. Jay Rhoades as Rhoades; to the State Real Estate Commission of Nebraska as the commission; to Edward E. Fritz, a tenant, as Fritz; to Mathilda Fritz as Mrs. Fritz; to the tenant Henry Frederick Thun as Thun; to William Henry Rutledge as Rutledge; and to Jay B. Smiley as Smiley.

The record discloses that Mundt held title in his own name to 234 and a fraction acres of farm land in Sarpy County. He retired from farming in 1940, and moved to Papillion, Nebraska. By oral agreement he rented to the Fritzs 154 acres, and 80 acres to Thun, the leases to run from March 1, 1946, to March 1, 1947. Mundt had been acquainted with Rhoades since 1945. Rhoades was engaged in the real estate, loan, and mortgage business and was desirous of listing Mundt's farm land for sale. On October 31, 1946, Mundt entered into a listing agreement with the American Mortgage Corporation through Rhoades who represented it. This agreement provided the sale price of the farm to be $45,000; provided further that in the event the farm sold for less than $45,000, the Mundts were to have $42,000 net, and possession was to be given March 1, 1948. In August 1946, Mundt contacted the Fritzs and Thun, his tenants, and they accepted an oral lease to remain on the farm from March 1, 1947, to March 1, 1948.

In the fore part of December an ad appeared in a newspaper describing the Mundt land and stating that the land was for sale and possession could be given March 1, 1947. Shortly thereafter Rhoades appeared at Mundt's home with an offer to purchase made by Smiley, in behalf of his wife, and by Rutledge, in the amount of $44,000. Mundt refused this offer, stating the price was $45,000, and no less. He called Rhoades' attention to the advertisement in the paper and told him that he could not give possession until March 1, 1948, as he had rented the farm for that period of time. Rhoades, in substance, told him to pay no attention to this item as all arrangements would be made by the proposed purchasers who were acquainted with the tenants and they would obtain possession March 1, 1947. On December 17, 1946, Rhoades returned with an offer to purchase from Smiley and Rutledge in the amount of $44,500. The Mundts accepted the offer and signed a written acceptance of it, agreeing to give warranty deed which was

signed and delivered to Rhoades, the land to be free and clear of all encumbrances except the 1947 taxes. This offer to purchase specified that possession was to be given March 1, 1947. The commission was designated as $2,225. Mundt testified that nothing was said at that time about possession being given on March 1, 1947.

Thereafter Mundt contacted Fritz and told him the farm had been sold and inquired of him if the purchasers of the farm had been to see him with reference to surrendering possession March 1, 1947. Fritz told him that he had not been contacted by the purchasers with reference to the matter. Mundt further testified that the next morning he went to see Rhoades and in the conversation Rhoades indicated that it was strange the matter of possession would come up, and volunteered to see Mundt the following morning and bring Smiley and Rutledge with him, and the four together would contact the tenants to ascertain about the trouble in giving possession. Rhoades did not come, as Mundt claimed he agreed to. Shortly thereafter written notice was served on Rutledge and Smiley's wife, the purchasers, to the effect that the Mundts would not perform the terms of the purported offer of purchase, and that the purchasers relied on this agreement to their peril. A notice of like character was sent to the American Mortgage Corporation and D. J. Rhoades, notifying such parties not to transmit, deliver, or surrender to the alleged purchasers or to any other person or concern whatsoever any paper writing upon which the signatures of the Mundts appear, purporting to convey, or granting an interest in the land in question, and demanding the return of the offer of purchase made by Mrs. Smiley and Rutledge. Thereafter the purchasers filed an action in the district court for Sarpy County for specific performance of the agreement made by the Mundts to accept their offer of purchase and to give possession March 1, 1947, as provided therein, making Mundts' tenants parties to the action.

Mundt's complaint and evidence is to the effect that

Rhoades misrepresented to him that the purchasers had made the proper arrangements with his tenants regarding the possession of the land on March 1, 1947.

It appears from the testimony of Rhoades that prior to the advertisement in the newspaper with reference to obtaining possession of the land March 1, 1947, one of his employees inserted an ad in the newspaper stating possession could be given of the Mundt farm on March 1, 1948.

Alma Mundt's testimony corroborated that of her husband with reference to the matter of possession, that is, that her husband could not give possession of the farm until March 1, 1948, and endeavored to impress Rhoades with that fact; and that at the time the offer of $44,500 was accepted Rhoades' attention was called to the newspaper ad by her husband and he stated that all arrangements had been made by the purchasers with reference to giving possession March 1, 1947. She further testified that she signed the necessary papers to consummate the deal. She was with her husband at Rhoades' office when her husband asked to see the acceptance of the offer to sell which they had signed, and told Rhoades that he had talked to his tenants and that no arrangements had been made by the purchasers with the tenants to surrender possession of the land March 1, 1947. At that time she heard Rhoades offer to come out with Rutledge and Smiley the next morning and straighten out the trouble with reference to the possession matter, but Rhoades did not come.

The testimony of the Fritzs is to the effect that they informed the prospective purchasers and Rhoades that they had the land leased until March 1, 1948; that these tenants had planted crops for the coming year, decorated a part of the house, and done other things which gave every reasonable intendment that they proposed to remain on the farm until March 1, 1948. Thun's testimony was very similar, except that Rutledge contacted him on December 22, 1946, when he informed Rutledge that he

had the land leased until March 1, 1948, and if he had to move, someone would have to pay him for it.

The evidence for the defendant given by witnesses Rutledge and Smiley was to the effect that they had visited the farm prior to the time of making the offer to purchase, had contacted the tenants Fritz and Thun, and that in conversations the Fritzs had told them that they hated to move because they would like to have the place more than one year, however, if the land was sold they would move. Thun told them that he understood that if the land was sold prior to January 1, 1947, possession would be given on March 1, 1947. Smiley was purchasing in behalf of his wife, and Rutledge was purchasing in his own behalf so that he would have land to farm from March 1, 1947, and that constituted the reason for the offer and purchase.

There is also evidence by the Mundts' tenants that he had informed them that the land had been listed for sale, and after December 17, 1946, had contacted them to ascertain whether or not the proposed purchasers had made any arrangements with them to surrender possession of the land on March 1, 1947. The tenants replied in the negative, and Mundt had said that the land had been sold.

Without stating the evidence further with reference to the conversations had between Smiley, Rutledge, and the Mundts' tenants, suffice it to say that it is in direct conflict with reference to the time when possession would be given, and we deem it unnecessary to review this part of the evidence in detail.

Rhoades testified with reference to the transactions had with Mundt, the listing of the property, the listing agreement, the contents of it, and that he had had a conversation with Mundt to the effect that if the farm was sold by January 1, 1947, possession would be given March 1, 1947, but if the farm was not sold before that date then the lease to the tenants would be in effect until March 1, 1948. Mundt stated that he had an understand-

ing with the tenants in possesison to that effect. Rhoades further testified that he was told by Mundt not to talk with the tenants, that he, Mundt, would take care of the matter of possession. He further testified with reference to the visits made to the farm, contacting the tenants Fritzs, and that nothing was said by them about a lease or any claim of possession; that after he acquired the $44,000 offer which Mundt refused, Mundt told him not to let the offer get away. There was no discussion about possession at that time. The offer of $44,500 provided for possession March 1, 1947, which Mundt was aware of. The Mundts signed a warranty deed at the same time they accepted the offer. Rhoades further testified that he was to investigate the loan on the property with the insurance company which Mundt seemed to be more interested in than any other part of the transaction, and Mundt so instructed this witness. He told about the down payment made, stating that he had $10,000, or was to have that much, which he would turn over to Mundt at his request and which Mundt declined to take at that time saying if he needed money he would call him.

Bernice Hardenbrook, an employee of Rhoades, testified that on December 17, 1946, when she was present with Rhoades at the Mundt home when the acceptance of the offer of Smiley and Rutledge was made, Mundt on three separate occasions stated that he would give possession of the farm March 1, 1947, for Rhoades to take care of the papers with reference to the insurance and he would take care of the tenants, and the purchasers would obtain possession March 1, 1947.

On rebuttal Mundt testified that he never told Rhoades to take care of the mortgage, that it was never mentioned, nor did he tell him not to see his tenants. He denied that he had ever agreed with Rhoades to give possession of the farm on March 1, 1947.

It also appears that an endeavor was made to ascertain why the tenants would not surrender possession of the farm and how best to obtain possession. This was done

at the instigation of counsel for the purchasers and by agreement with counsel for Mundt without success.

While some contention is made that Rhoades violated section 81-881, R. S. 1943, with reference to the commission to be received for the sale of the farm, we conclude that the listing agreement specifically provided that in the event the farm sold for less than $45,000, the Mundts would receive $42,000 net. The sale at $44,500 would give the Mundts $42,000 net, as provided for in the contract. We conclude there is no unfair practice on the part of Rhoades in such respect as contemplated in the afore-cited section of the statutes.

The appellant assigns as error the following: That the trial court erred in finding that as to the plaintiff D. J. Rhoades, the evidence failed to establish any violation of the provisions of sections 81-881 to 81-887, R. S. 1943, or offer any basis for the suspension of his license; further erred in finding that as to both plaintiffs the order of the commission suspending their respective licenses should be set aside and vacated; and further, that the decision of the trial court was contrary to the evidence and the law.

The principal issue of this appeal is whether or not the evidence establishes that D. J. Rhoades, while negotiating the sale of the G. E. Mundt farm, made any misrepresentations as to the terms or conditions of that sale.

From a review of the record it is apparent that the listing agreement for the sale of the farm signed by Mundt and executed on October 31, 1946, specifically stated that possession would be given on March 1, 1948. While there is evidence that in the event the farm was sold prior to January 1, 1947, possession would be given March 1, 1947, it would seem that if this evidence were true, this matter could have been taken care of by placing the same in the listing agreement. While it is true that the Mundts accepted an offer to purchase for $44,500, that in the purchase agreement possession was to be given March 1, 1947, and that they gave a warranty

deed in conformity with the agreement, the evidence as a whole indicates that the reason for such acts on their part was that they had been informed by Rhoades that all arrangements had been made with the tenants to surrender possession of the farm March 1, 1947. This is further indicated by the anxiety of Mundt in contacting his tenants to ascertain the truth of the matter, and in sending notices shortly thereafter, as heretofore mentioned, to the purchasers, the American Mortgage Corporation, and Rhoades not to proceed further with reference to the agreement signed by them wherein they had accepted the offer of purchase.

In Feight v. State Real Estate Commission, 151 Neb. 867, 39 N. W. 2d 823, we said: "We are here concerned with the type of hearing to be held in the district court where the appellate proceedings are required to be commenced and carried on as an original action. The proceeding in the district court, under such a statute, is in the nature of an original action, equitable in nature, commenced by an aggrieved party who sets forth his complaint or complaints against the * * * commission making the order which he claims is not in accordance with law. The complaints may be that the charge was insufficient; that he was not given proper notice of the hearing; that opportunity to be heard was not afforded; that the evidence did not warrant the ruling made; or any other objection to the procedure which if sustained would affect the validity of the order. The State Real Estate Commission is then entitled to answer and deny the allegations, or affirmatively set forth its justification of the order complained of. The court is required to determine only the issues thus raised. It appears therefore that it was the intent of the Legislature to provide more than a review to determine whether the order complained of was arbitrary or capricious. The act confers upon the district court the power to inquire into * * * the pleadings filed in the district court including, if alleged, that the findings of the commission are contrary to the weight

of the evidence. See Withers v. Golding, 100 Utah 179, 111 P. 2d 550."

It will be observed that the foregoing cited authority determines that a trial in a case in the nature of the one in the instant case is the same as an original equitable action in the district court and therefore considered de novo in the Supreme Court.

From a review of the pleadings, evidence, and exhibits in evidence, we conclude the trial court erred in reversing the order of the commission insofar as such order affected D. J. Rhoades.. As heretofore pointed out, the American Mortgage Corporation, with reference to the real estate license issued to it, is not involved in this cause.

We reverse the judgment and remand the cause to the district court to enter judgment in conformity with the State Real Estate Commission's order rendered March 27, 1947, to the extent of sustaining the order as it relates to suspending the real estate broker's license of D. J. Rhoades and in accordance with this opinion.

Other assignments of error need not be discussed.

REVERSED AND REMANDED WITH DIRECTIONS.