ROD GILLESPIE, APPELLEE, V. STATE REAL ESTATE COMMISSION OF THE STATE OF NEBRASKA, APPELLANT.

109 N. W. 2d 305

Filed June 2, 1961. No. 34947.

*Clarence A. H. Meyer*, Attorney General, and *Gerald S. Vitamvas*, for appellant.

*Beatty, Clarke, Murphy, Morgan, Pederson & Piccolo* and *Maupin, Dent, Kay & Satterfield*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

The proceeding out of which the action in this court

grew was a complaint filed June 18, 1959, before the State Real Estate Commission of the State of Nebraska, entitled State of Nebraska ex rel. State Real Estate Commission of the State of Nebraska, complainant, v. Rod Gillespie, Alyce Brodbeck, and Kenneth Tetro, respondents, who were the holders of real estate licenses issued by the State Real Estate Commission of the State of Nebraska, which will be referred to hereinafter as the commission, and were associated in business under the name of Action Agency, the place of business of which was North Platte, Nebraska.

Prior to the filing of this complaint by the commission a complaint had been filed on April 7, 1959, against the respondents by one Walter C. Wilkening.

The proceedings from the outset were regular. No substantial dispute as to this is presented here. They were instituted and carried on in conformity with statutory provisions for the creation and functioning of the State Real Estate Commission of the State of Nebraska. By sections 81-867 and 81-868, R. R. S. 1943, real estate brokers and real estate salesmen respectively are defined. Section 81-869, R. R. S. 1943, provides for the issuance of licenses. Section 81-879, R. R. S. 1943, provides for the revocation and suspension of licenses. Section 81-881, R. R. S. 1943, specified the grounds on which revocation and suspension might be ordered by the commission. This section was amended which amendment became effective after the date of the acts alleged in the complaint, but none of the grounds of revocation contained in section 81-881, R. R. S. 1943, were removed.

This statutory provision contained 15 separate grounds for revocation but only 4 of them have any significance here. The four are (1) accepting, giving, or charging undisclosed commission, (2) acting as undisclosed principal, (3) inducing a party to a contract of sale to break the contract for the purpose of substituting a new contract with another principal, and (4) demonstrated unworthiness.

By the complaint of the commission it was charged in much greater detail than it is necessary to set out herein that respondent Gillespie entered into an agreement with Walter C. Wilkening, the owner of 320 acres of land, whereby Gillespie was given the exclusive right of sale of the land for 60 days from January 10, 1959, for which, in the event of sale, the Action Agency would be entitled to receive a commission of 5 percent; that on January 12, 1959, respondent Tetro obtained an offer of $40,000 in writing and $3,000 as a down payment from one Paul Potter for the land; that on the same day and before any acceptance was made by Wilkening, respondent Gillespie received an offer from John Washa of $43,200; that this offer was never communicated to Wilkening until January 14, 1959, after he had been caused to accept in writing the offer of $40,000 made by Potter; that after Wilkening had signed the offer in writing he was induced to cancel the Potter contract, a copy signed by him having never been delivered to Potter, on agreement that he would receive $500 in addition to what he would receive out of the sale for $40,000 after deduction of 5 percent commission; that he was further induced to execute and deliver a contract of sale to John Washa for $43,500 which also exacted of Wilkening the payment of a commission on that amount to the Action Agency; and that Wilkening received no information from any of the respondents that prior to the execution by him of the Potter contract they or any of them had an offer of $43,200 from Washa.

A notice of hearing and place thereof was contained in the complaint. The purpose of hearing was to ascertain whether or not the licenses of the respondents should be revoked or suspended.

Tetro filed no answer to the complaint by Wilkening to the commission. Brodbeck and Gillespie did file answers. Tetro filed an answer to the complaint of the commission. Brodbeck and Gillespie did not. Their answers to the complaint of Wilkening were treated for

all purposes as answers to the complaint of the commission.

By his answer Gillespie admitted that he was a licensed real estate broker doing business as the Action Agency. He admitted the transactions described in the complaint, but denied substantially that he was guilty of any act which was improper or illegal. There is much detail in the answer but it is not deemed necessary to set out the details herein.

Alyce Brodbeck in her answer admitted that she was a real estate saleswoman employed by Rod Gillespie. She also denied any wrongdoing.

Kenneth Tetro in his answer admitted that he was a real estate salesman employed by Rod Gillespie. He denied any wrongdoing.

A hearing was had on the complaint before the commission and on November 30, 1959, an order was entered dismissing the complaint as against Alyce Brodbeck and Kenneth Tetro. By the same order it was found that the charges made against Gillespie were true and accordingly his license as a real estate broker was revoked and canceled.

By action of Gillespie a proceeding for review of the action of the commission was instituted in the district court. It was presented to the district court on the record made before the commission including the evidence there adduced, and some additional evidence adduced at the hearing in the district court.

At the conclusion a judgment was rendered reversing the order of the commission and reinstating the real estate license of Gillespie. A motion for new trial was made. This motion was overruled. From the judgment and the order overruling the motion for new trial the commission has appealed.

As grounds for reversal of the judgment of the district court the commission says that (1) the district court erred in finding that the evidence failed to establish any violation of the provisions of section 81-881, R. R. S.

1943, and (2) the district court erred in finding that the order of the commission under date of November 30, 1959, should be reversed and set aside, and in ordering the real estate license of Rod Gillespie reinstated.

From an examination of the record it becomes apparent that the decision herein must depend upon what has been disclosed by the evidence in the light of established principles of law.

In reviewing the action of the State Real Estate Commission the district court and the Supreme Court are required to consider the matter de novo. See, § 81-884.02, R. R. S. 1943; Feight v. State Real Estate Commission, 151 Neb. 867, 39 N. W. 2d 823; Rhoades v. State Real Estate Commission, 152 Neb. 701, 42 N. W. 2d 610.

In general the duties and liabilities of a real estate broker are essentially the same as those which an agent owes to his principal. See Gesselman v. Phillips, 110 Neb. 416, 193 N. W. 750.

It is also true that a real estate broker who fails to disclose to his principal every material fact in the transaction which is the subject matter of the agency is guilty of fraud and bad faith. See Ericson v. Nebraska-Iowa Farm Investment Co., 134 Neb. 391, 278 N. W. 841.

The pertinent facts in this case are in large measure not in dispute. The 320 acre farm of Walter C. Wilkening was listed with Action Agency, or Rod Gillespie, a licensed real estate broker and sole owner of the Action Agency, for sale under an exclusive agreement for 60 days after January 10, 1959. Alyce Brodbeck and Kenneth Tetro were licensed as real estate salesmen and employed as such to engage in the sale of real estate for Gillespie. On January 12, 1959, Tetro went with one Paul Potter, a prospective purchaser, to see the land. They returned to Potter's home where an agreement to purchase the land for $40,000 was signed by Potter and his wife. Tetro then took both Potter and his wife to see the land about 5 p.m. When they arrived Gillespie was there showing the land to one John Washa, also a

prospective purchaser. Tetro told Gillespie he had sold the land. On his way back to Gothenburg Tetro called Brodbeck at the office by telephone and told her he had sold the land to Potter for $125 an acre, or $40,000. On their arrival in Gothenburg Potter gave Tetro a check for $3,000 as a down payment. Gillespie and Washa left the farm. Washa testified that as they drove back to town Gillespie told him the land had been sold but the buyer might have difficulty raising the money. Washa said he offered Gillespie $135 an acre with 2 days to accept the offer. Gillespie denies he received such an offer on January 12th. The testimony of Brodbeck and Tetro as to whether or not the offer was discussed is, to say the least, equivocal. The testimony of Brodbeck indicates that Gillespie did have such an offer.

On January 14, 1959, about 11 a.m., Tetro and Gillespie presented the Potter agreement to Wilkening at which time he and his wife signed it. About 12:30 p.m., Tetro called Potter at the suggestion of Gillespie to inquire if he would resell the farm for a profit and Potter agreed to take $1,000. No copy of Wilkening's acceptance had yet been delivered to Potter. About 1:30 p.m., Gillespie and Brodbeck met Washa and secured from him a written agreement to purchase the land for $43,500 and a check for $4,000 as a down payment.

The evident purpose was to obtain Wilkening's acceptance of the Potter contract, get the consent of Potter to destroy the completed contract for a consideration of $1,000, and then have Wilkening accept the offer of Washa for $43,500 for payment to him of $500 above what he had agreed to accept from Potter. Brodbeck demurred to this until legal advice was obtained. Such advice was obtained and, in the late afternoon Gillespie and Brodbeck presented the matter to Wilkening and offered him $500 to cancel the Potter agreement and accept the Washa agreement. Wilkening testified that he was induced to sign the Washa agreement on the substantial representation that he had already sold to

Potter and there was nothing he could do about it and he might as well take the offered $500, which amounted to that much more than that to which he was entitled. The Potter agreement was surrendered and the Washa agreement accepted.

If the testimony of Brodbeck is true, from this, the testimony of Washa, the evidence of speed in effecting the Washa transaction, and the fact that this was in its primary aspect a matter of which Gillespie should have had knowledge, a reasonable conclusion is that he did have knowledge and that his design was to evade his proper duty and to unjustly and improperly enrich himself.

A design and purpose of his which flows without question from his own testimony was to charge and retain for himself a commission of $2,000, or 5 percent, on the transaction of Wilkening with Potter and in addition a commission of 5 percent on the completed sale from Wilkening to Washa, out of which he agreed to pay Potter $1,000 and Wilkening $500.

Another incident attended the ultimate closing of the sale from Wilkening to Washa which has no controlling significance but which has significance on the question of whether or not Gillespie acted in good faith toward Wilkening. After obtaining legal advice Wilkening filed a complaint with the State Real Estate Commission relative to the conduct of Gillespie, Brodbeck, and Tetro. He also instituted legal action against these three parties. The legal action was settled by what amounted to waiver of all commission by Gillespie, by allowing Potter to retain the $1,000 paid to him by Gillespie, and by agreement of Wilkening, which was performed, that he would withdraw the complaint he had made to the commission. This represented a loss to Gillespie, in addition to entire loss of commission, of $1,000 to Potter, $800 to Tetro, and at least $350 in advertising cost. The reason given for this by Gillespie was substantially that it was to avoid unfavorable publicity.

Incidentally after withdrawal of complaint by Wilkening the commission refused to let the matter drop, but filed on its own behalf the complaint which is the one on which the present action is predicated.

The review of evidence contained herein, it is believed, presents a fair ultimate analysis of the true intent, motive, and purpose of Gillespie with regard to the matters presented by the complaint. It appears from this analysis that he was guilty of violating each and all of the four inhibitions of section 81-881, R. R. S. 1943, named hereinbefore in this opinion. It also appears he violated his general duty as an agent of Wilkening.

It appears further and specifically that he failed to disclose to Wilkening material facts which had a bearing on the transaction and accordingly was guilty of fraud and bad faith.

Accordingly the judgment of the district court is reversed and the cause remanded with directions to render judgment sustaining the order of the State Real Estate Commission whereby the license of Rod Gillespie was revoked and canceled.

REVERSED AND REMANDED WITH DIRECTIONS.